Nos. 104,068
104,432

STATE OF KANSAS, *Appellee*, v. TABATHA L. ADAMS, *Appellant*.
(304 P.3d 311)

Opinion filed June 21, 2013.

*Christina M. Kerls*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kevin B. Salzman*, assistant county attorney, argued the cause, and *Terry J. Malone*, county attorney, *David Belling*, deputy county attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: In this consolidated appeal, Tabatha Adams seeks review of (1) the district court's denial of her K.S.A. 60-1507 motion in which she contended her trial counsel was constitutionally defective in negotiating her guilty plea to one count of aggravated indecent liberties with a child, and (2) the district court's denial of her motion in the underlying criminal case seeking to withdraw her guilty plea.

Although a lack of factual findings from the district court hinders our ability to review Adams' claims of ineffective assistance of counsel, we conclude Adams failed to demonstrate that even if she had received effective assistance of counsel, she would have declined to plead guilty and insisted on going to trial. Therefore, we affirm the district court's denial of her K.S.A. 60-1507 motion and her motion to withdraw her guilty plea.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Adams with aggravated indecent liberties with a child, aggravated criminal sodomy, and sexual exploitation of a child. The State later amended the complaint to add a second count of sexual exploitation of a child. The charges arose when police were given a memory card containing 50 photographs depicting an 8-year-old female child and two adults engaged in a variety of sexual acts. Authorities identified the adults as Zach Noble and Adams and the child as Adams' biological daughter, S.A. Adams acknowledged during questioning by law enforcement that the photographs depicted her, her daughter, and her boyfriend, Noble. She also confessed to police that while the photographs were taken at Noble's home in Nebraska, she and S.A. had engaged in sexual acts in Dodge City while Noble watched via webcam.

Adams' appointed counsel, Linda Eckelman, negotiated a plea agreement in which Adams agreed to plead guilty to aggravated indecent liberties with a child and agreed to testify against Noble. The agreement also prohibited Adams from filing a departure motion or contacting S.A. until S.A. turns 18. In return, the State agreed to dismiss the remaining three counts.

At the plea hearing, the district court informed Adams that pursuant to her plea she would be sentenced to life imprisonment and required to serve 25 years before being eligible for parole. Adams affirmed she was satisfied with Eckelman's services, understood the terms of the plea, and understood the sentence. Adams pled guilty to aggravated indecent liberties with a child, and the district court accepted her plea and entered the conviction.

Soon after the plea hearing, Adams sought to have Eckelman removed as counsel based on Adams' dissatisfaction with Eckelman's services. At the attorney status hearing, the district court informed Adams that even if Eckelman withdrew from the case, Adams would remain bound by the plea agreement. Adams told the district court she wanted to retain Eckelman as her attorney, indicating, "I guess I've just been frustrated with the whole process. But, my parents spoke with someone else, and they said under the conditions and stuff, that I was probably getting the best I was gonna get."

At sentencing, Eckelman submitted several letters on Adams' behalf, and Adams' stepfather testified that Adams was a "model citizen" before she became involved with Noble. Adams also informed the court that she agreed to the plea to protect her daughter and she lived with guilt every day for what happened to S.A. The district court sentenced Adams to a hard 25 life sentence in accordance with Jessica's Law, K.S.A. 21-4643(a)(1)(C).

Adams subsequently filed a pro se K.S.A. 60-1507 motion, arguing Eckelman was ineffective in negotiating Adams' plea. Adams' new appointed counsel filed a motion to withdraw Adams' plea in the underlying criminal case. Broadly stated, the filings alleged Adams received ineffective assistance of counsel because Eckelman abandoned her role as Adams' counsel, failed to ensure Adams understood the sentence for the crime to which she pled, failed to

investigate potential defenses, and failed to notify the district court that the factual basis for the plea was defective. Adams also asserted that Eckelman shamed her into taking the plea by telling her that S.A. hated Adams and if Adams had any decency she would not proceed to trial.

The district court conducted an evidentiary hearing on Adams' K.S.A. 60-1507 motion and motion to withdraw her plea. Adams and Eckelman both testified at the hearing, and on every critical issue, their testimony conflicted. For instance, Adams claimed Eckelman failed to advise her she would be sentenced to life without the possibility of parole for 25 years and that her plea required her to waive her statutory right to file a departure motion. In contrast, Eckelman testified she informed Adams of the mandatory sentence, and explained to Adams her right to file a departure motion and that she was agreeing to waive that right by pleading guilty. Adams also testified Eckelman failed to investigate a number of defenses and should have informed the court the State provided a deficient factual basis for the plea. Eckelman denied these allegations.

Without making any credibility determinations or factual findings regarding Adams' claims of ineffectiveness, the district court rejected Adams' claim of prejudice. Specifically, the district court concluded Adams' guilty plea was motivated by the overwhelming evidence against her, the "near certainty of her conviction," and Adams' desire to prevent her daughter from having to testify.

We have jurisdiction over Adams' consolidated appeal pursuant to K.S.A. 22-3601(b)(1).

## ANALYSIS

Adams asserts that under both the Sixth Amendment to the United States Constitution and K.S.A. 2012 Supp. 22-3210(d)(2), this court should allow her to withdraw her guilty plea because she received ineffective assistance of counsel from her attorney, Eckelman. We address each contention in turn.

## ADAMS HAS NOT PROVEN THAT THE SIXTH AMENDMENT REQUIRES THIS COURT TO ALLOW WITHDRAWAL OF HER GUILTY PLEA

The Sixth Amendment to the United States Constitution guarantees, with limited exception, a criminal defendant's right to assistance of counsel. Adams asserts she received ineffective assistance because Eckelman failed to advise her adequately of the consequences of her plea, including the sentence and its mandatory nature; failed to investigate her potential defenses; failed to inform the judge of a potential jurisdictional defect in the prosecutor's recitation of facts during the plea hearing; and made statements shaming Adams into taking the plea.

### Standard of Review

An ineffective assistance of counsel claim presents mixed questions of law and fact. When such a claim is brought under K.S.A. 60-1507 and the district court conducts a full evidentiary hearing on the claim, we review the district court's factual findings for substantial competent evidence and determine whether the court's factual findings support its conclusions of law. The district court's conclusions of law are reviewed de novo. *Thompson v. State*, 293 Kan. 704, 715-16, 270 P.3d 1089 (2011).

### Analysis

In *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), the United States Supreme Court articulated the test for determining whether a defendant has received constitutionally ineffective assistance of counsel under the Sixth Amendment and when that deficient representation requires reversal. Pursuant to *Strickland*, the defendant must first show that the "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Second, the defendant must demonstrate the deficient performance resulted in prejudice. 466 U.S. at 687.

In a decision issued the same day as *Strickland*, the Court in *Cronic* articulated narrow exceptions to *Strickland's* second re-

quirement, holding a defendant is not required to prove prejudice in three situations. One such circumstance is when counsel "entirely fails" to subject the prosecutor's case to meaningful adversarial testing. *Cronic*, 466 U.S. at 659. Adams asserts her counsel was constitutionally ineffective under both *Cronic* and *Strickland*.

As noted, although the district court conducted an evidentiary hearing, it made no factual findings regarding Adams' claims of ineffective assistance of counsel, nor did it specifically determine whether Eckelman's representation fell below an objective standard of reasonableness. Despite this failure, both parties urge this court on appeal to consider whether Eckelman rendered ineffective assistance of counsel to Adams. But because Eckelman and Adams testified inconsistently regarding Eckelman's performance and this court is not permitted to make credibility findings, the district court's failure to make factual findings precludes our review of this issue. See *State v. Qualls*, 297 Kan. 61, Syl. ¶ 1, 298 P.3d 311 (2013) (appellate courts are not in position to make credibility determinations). Instead, we will assume for purposes of review that the district court found Eckelman ineffective. However, we caution that the better practice is for district courts to make detailed factual findings following an evidentiary hearing in order to aid in appellate review.

### Adams' complained-of errors do not fall into the limited *Cronic* exception.

Adams argues Eckelman completely abandoned her role as Adams' counsel by failing to challenge the State's case and therefore, pursuant to *Cronic*, this court need not consider whether Adams was prejudiced by her counsel's deficient performance. Adams argues Eckelman abandoned her adversarial role because: (1) Eckelman acted as the victim's advocate when she told Adams she had destroyed her daughter's life and that if she had any decency she would plead guilty, and (2) Eckelman failed or refused to investigate Adams' claim that Noble had threatened her and failed to ask for a psychological evaluation.

Errors evaluated under *Cronic* are rare, and most alleged deficiencies are properly evaluated under *Strickland* rather than

*Cronic.* See *Florida v. Nixon*, 543 U.S. 175, 189-90, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004) (noting that *Cronic* itself illustrates "just how infrequently" cases will fall into its exception). To fall under the *Cronic* exception, counsel's abandonment of the defendant must be "complete," and counsel must fail "entirely" to subject the State's case to meaningful adversarial testing. See, *e.g.*, *United States v. Collins*, 430 F.3d 1260 (10th Cir. 2005) (attorney, who had filed motion to withdraw, declined to comment at defendant's competency hearing and mentioned he possessed probative evidence but did not introduce it; court held right to counsel denied because no meaningful adversarial testing); *Tucker v. Day*, 969 F.2d 155, 159 (5th Cir. 1992) (finding appointed counsel at re-sentencing hearing was ineffective under *Cronic* because he did not consult with defendant, had scant knowledge of facts, and made no helpful comments at sentencing); see also *State v. Carter*, 270 Kan. 426, 14 P.3d 1138 (2000) (finding counsel ineffective under *Cronic* when defendant's trial counsel conceded defendant had killed victim and instead focused on premeditation issue, despite defendant's disagreement with counsel's strategy). But see *Edgar v. State*, 294 Kan. 828, 842-43, 283 P.3d 152 (2012) (*Carter* decision called into question).

But even assuming the deficiencies Adams alleges occurred, Eckelman did not entirely fail to function as Adams' advocate or fail to subject the State's case to testing. As the State points out, the record shows Adams hoped to enter a plea and Eckelman's plea negotiations resulted in the State dismissing three charges, including another Jessica's Law charge and two severity level 5 felonies. Eckelman also reviewed photographs, S.A.'s interview, and police reports to determine the strength of the State's case. These actions demonstrate Eckelman did not entirely fail to represent Adams, and, therefore, this case does not present the rare situation in which a defendant is not required to prove prejudice.

*Adams is not entitled to relief under Strickland because she failed to demonstrate she was prejudiced by any deficiency.*

Next, we consider whether Adams is entitled to relief under *Strickland*. Adams points to three areas in which Eckelman's rep-

resentation fell below an objective standard of reasonableness: (1) Eckelman failed to ensure Adams understood the consequences of pleading guilty, particularly the mandatory nature of the sentence; (2) Eckelman failed to investigate potential defenses; and (3) Eckelman failed to notify the district court at the plea hearing that Adams believed the factual basis for the charge was jurisdictionally defective. Assuming Eckelman provided ineffective counsel in each of these areas, we must next determine whether Adams proved that, absent Eckelman's errors, Adams would not have pled guilty and would have insisted on going to trial. See *State v. Szczygiel*, 294 Kan. 642, 647, 279 P.3d 700 (2012).

In concluding Adams was not prejudiced by any of Eckelman's failures, the district court discussed the strength of the State's evidence and the reasons for Adams' plea. Specifically, the district court found Adams' plea was motivated by the "near certainty of conviction" and her desire to protect her daughter from testifying. Ultimately, the district court rejected Adams' assertion that had she been effectively represented, she would not have pled guilty.

Based on these factual findings, which are supported by the record, Adams has not proven to a reasonable probability she would have insisted on going to trial absent the errors committed by her counsel. As the district court found, in addition to her desire to protect her daughter, Adams faced overwhelming evidence of guilt, including her own *Mirandized* confession that she and her daughter engaged in sexual acts in Dodge City, testimony from her daughter, and potential testimony from Noble. Given the weight of this evidence, we conclude it is unlikely Adams would have risked a trial. Additionally, had she proceeded to trial, this evidence likely would have resulted in convictions for additional crimes, including another crime under Jessica's Law, and a much greater sentence. These facts dispel the possibility that, but for Eckelman's errors, Adams would have proceeded to trial. See *State v. Bricker*, 292 Kan. 239, 255, 252 P.3d 118 (2011).

Further, Adams' own statements call into question whether she would have forgone a plea and proceeded to trial. A few weeks before her plea, Adams sent Eckelman a letter advising Eckelman that she was unhappy that the apparent current plea offer was 25

years, but also indicating: "I had always hoped we would be able to make a plea because I did not want my daughter dragged through court." Adams reiterated a similar feeling at sentencing, stating, "I agreed to the plea to keep my daughter out of court. I do know that I put her through a lot in those couple of months. And, I didn't want to have to drag her through any more."

In support of her claim that had her counsel not been ineffective she would have gone to trial, Adams points to a statement she made at the combined hearing on her motion to withdraw her plea and her K.S.A. 60-1507 motion. But even that statement, made in hindsight, expressed her primary desire to protect her daughter from testifying:

"Honestly I would hate to see [S.A.] testify. I would hope that something could be met before that but if it comes down to it I feel like I should fight this time because I did nothing the first time because I was such an emotional wreck and I was worried about my daughter. I'm still worried about my daughter. But my parents have also told me that they have done lots of studies and sometimes it helps kids to testify. So I don't know. It's a risk I guess at this point I would be willing to take."

Significantly, the district court heard Adams' tepid statement indicating a willingness to risk trial and apparently discounted that statement in finding a lack of prejudice. This rejection is tantamount to a credibility determination—a determination we are not free to reconsider.

To summarize, Adams is burdened with demonstrating that a reasonable probability exists that, but for Eckelman's errors, she would have insisted on going to trial. But the weight of the evidence against Adams, her repeated expressed desires to protect her daughter from testifying, and the potential for a much greater sentence all weigh against Adams' assertions that had she been effectively counseled she would have risked a trial. The district court correctly held that Adams failed to meet her burden to demonstrate prejudice.

ADAMS' CLAIM THAT UNDER K.S.A. 2012 SUPP. 22-3210 SHE SHOULD BE ABLE TO WITHDRAW HER GUILTY PLEA ALSO FAILS.

In contending the district court erred in denying her motion to

withdraw her guilty plea under K.S.A. 2012 Supp. 22-3210(d)(2) to correct manifest injustice, Adams essentially incorporates and restates her contentions regarding her K.S.A. 60-1507 claim of ineffective assistance of counsel.

K.S.A. 2012 Supp. 22-3210(d)(2) permits a district court to allow a defendant to withdraw a guilty plea after sentencing in order to "correct manifest injustice." But to establish manifest injustice in this circumstance, a defendant must first demonstrate counsel's performance deprived the defendant of his or her Sixth Amendment right to counsel. See *Bricker*, 292 Kan. at 245-46. Based on our rejection of Adams' ineffective assistance of counsel claim, Adams' statutory argument also fails.

Affirmed.