NOT DESIGNATED FOR PUBLICATION

No. 114,344

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CARL E. BENGTSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed March 10, 2017. Affirmed.

*Nancy Ogle*, of Ogle Law Office L.L.C., of Wichita, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE and GARDNER, JJ.

*Per Curiam*:  Carl E. Bengtson appeals from the district court's denial of his K.S.A. 60-1507 motion alleging ineffective assistance of counsel arising from counsel's handling of the jury's visit to the crime scene. Having reviewed the record, we find no error and affirm.

*Factual and procedural background*

The facts underlying Bengtson's convictions were relatively straight-forward. As discussed in the opinion in his direct appeal, L.P. and her infant son lived in an apartment in a large house in Hutchinson that had been converted into apartments. L.P. lived in

1

Apartment 3, located on the second floor of the house. The only other apartment on the second floor was Apartment 2, rented out to Bengtson. L.P. and Bengtson were not friends, although they met occasionally coming and going from their respective apartments. Both apartments were accessible by two sets of stairs—one from the front of the house and one from the back. *State v. Bengtson*, No. 103,958, 2012 WL 2620544, at *1 (Kan. App. 2012) (unpublished opinion), *rev. denied* 297 Kan. 1248 (2013).

In January 2009, friends were visiting L.P. at her apartment. When L.P. and one friend left to run errands, the other friend, J.G., stayed to take a nap in L.P.'s bedroom. While the women were gone, J.G. awoke from his nap, sat up in the bed, and saw, across the semi-dark apartment, a naked man in the kitchen, facing away from J.G. The naked man apparently realized someone was in the apartment and promptly ran out the apartment's front door. *Bengtson*, 2012 WL 2620544, at *1. When L.P. returned to the apartment, J.G. hesitated to tell her about the incident. When he did so later than evening, L.P. immediately called the police. When the officer arrived, he spoke with L.P. and J.G., then knocked on Bengtson's apartment door, but no one responded. The officer completed a criminal trespass report, which was passed on to detectives for further action. 2012 WL 2620544, at *1.

After the January intrusion, L.P. and her child frequently slept elsewhere. Over the next few months, L.P. also noticed that several pairs of her underwear were missing, but she simply assumed she had lost them while doing laundry. In April 2009, L.P. and her son returned to the apartment around 8 a.m. When they entered the apartment through its front door, L.P. observed Bengtson, naked, coming out from behind the blanket that hung between her kitchen and her bedroom. Bengtson immediately ran out the backdoor of the apartment, and L.P., carrying her son, ran out of the front door and called police from her car. *Bengtson*, 2012 WL 2620544, at *2.

2

A few minutes after police arrived, L.P. pointed out Bengtson as he was getting into his car. Police arrested him and took him to the Reno County jail. As Bengtson was changing into a jail uniform, jail staff saw a pair of women's underwear fall out of Bengtson's pants. After waiving his *Miranda* rights, Bengtson admitted having been inside L.P.'s apartment to steal CDs and DVDs. When later questioned about the women's underwear, Bengtson admitted having picked it up from the floor in L.P.'s bedroom. L.P. identified the underwear as hers. *Bengtson*, 2012 WL 2620544, at *2-3.

As a result of the January and April incidents, Bengtson was charged with two counts of aggravated burglary, misdemeanor theft, and one count each of misdemeanor and felony lewd and lascivious behavior. Bengtson denied being the person involved in the January incident but admitted his involvement in the April incident, blaming it on his intoxication.

Prior to trial, the State filed a motion to permit the jury to visit the site where the crimes allegedly occurred so the jurors could observe the size of the apartment, the location of the rooms, the two stairways exiting from the second floor apartments, and the doors of the apartments. Bengtson objected, but the court ultimately granted the State's request.

Early in the trial, the court transported the jurors to the apartment house where Bengtson and L.P. had lived. The court admonished the jurors not to talk about the case among themselves during the viewing or to allow anyone else to talk to them about it. A court reporter accompanied the jurors to record any objections or discussions. Defense counsel also traveled to the apartment in a separate vehicle. Before they left, the State introduced its investigator, John Tracy, advising the court that he would show the jury the property. The court reporter recorded only a few comments during the visit.

3

After the jurors returned to the courthouse, they took a recess while counsel discussed several matters with the court. During that hearing, defense counsel asserted that when the jurors and attorneys arrived at the house, a news reporter was standing at the entrance. The reporter had allegedly walked through the house and apartment with the jurors and questioned the current owner of the apartment. Counsel expressed concern that the jurors *may* have heard part of this conversation. Both defense counsel and the defendant were present during the viewing as well. Because of Tracy's presence and the presence of the news reporter, Bengtson requested a mistrial. The judge did not find the procedure improper absent a showing of some prejudice. The judge refused counsel's request to ask the jurors if they had heard any conversations while at the apartment house.

After all the evidence was presented, the jury convicted Bengtson of all charges. Bengtson filed a timely motion for judgment of acquittal and for new trial challenging the sufficiency of the evidence and the voluntariness of his inculpatory statements and alleging error during the jury's visit to the crime scene. The district court denied the motion and sentenced Bengtson to a controlling term of 169 months' imprisonment. Bengtson timely appealed.

On direct appeal, Bengtson argued the following: (1) insufficient evidence supported his conviction of the January incident; (2) the district court erred in denying the motion to suppress his statements to police; (3) the district court improperly refused to permit questioning of the jurors about events connected with the visit to the crime scene; (4) the district court improperly admitted prior crimes and acts evidence under K.S.A. 60-455; and (5) the cumulative effects of these errors required reversal of his convictions.

This court rejected all of Bengtson's arguments. *Bengtson*, 2012 WL 2620544, at *1. After analyzing the record regarding the motion to permit a view of the crime scene and the events during jurors' visit to the crime scene, we found no abuse of discretion by the trial court. 2012 WL 2620544, at *8-10. We emphasized that defense counsel and the

4

defendant were at the scene with the jurors, as was the prosecutor, but none indicated they heard anything specific from the conversation between the news reporter and new owner of the building. We also recognized that the trial court had clearly admonished the jurors not to discuss the case during the trip and that Bengtson had not presented affidavits from any juror establishing that any improper conversations were held. 2012 WL 2620544, at *10. The Supreme Court denied Bengtson's petition for review.

Bengtson then filed a motion under K.S.A. 60-1507 in the district court, generally alleging that his trial counsel ineffectively failed to investigate and inadequately represented him at trial. He also asserted his court-appointed appellate attorney failed to submit the brief he sent to her. Bengtson attached to his petition a number of court opinions, arrest reports, portions of law enforcement reports, portions of transcripts, and other documents. Bengtson also attached a memorandum in support of his motion. His arguments, although not always clear, seemed to assert the following: (1) no chain of custody was shown for the underwear he allegedly stole from L.P.; (2) his trial attorney spent too little time with him preparing for trial; (3) his attorney failed to ask for lesser included instructions for the charged offenses; and (4) the trial judge was biased and vindictive. As support for the latter, Bengtson referred to prior appellate rulings censuring the judge and removing him from office.

On the same day, Bengtson filed an addendum to his memorandum of law which argued violations of his constitutional rights under the Fourth, Fifth, and Sixth Amendments. Bengtson only once mentioned the jury's visit to the crime scene; in the motion, he asserted that allowing the viewing was more prejudicial than probative.

The district court failed to take any action on Bengtson's motion. So approximately 3 months later, Bengtson filed a motion for new trial which mirrored his earlier addendum. Two weeks later, Bengtson filed a pro se notice of appeal. Bengtson also sent several letters requesting a written ruling on his motion, seeking information

5

about the status of his appeal, and seeking a stay and remand of his pro se appeal which had never been docketed.

The district court thereafter appointed counsel to represent Bengtson on his 60-1507 motion and scheduled a status hearing. Appointed counsel filed an amended petition on Bengtson's behalf focusing his ineffective assistance of counsel claims on trial and appellate counsel's failure to obtain and attach affidavits from jurors to support his claim that his trial had been improperly impacted by conversations and events during the jury's visit to the crime scene.

The State responded to Bengtson's various pleadings by filing a motion to dismiss, asserting that Bengtson's original pro se motions were too vague to provide any basis for statutory relief. In addition, the State asserted that the amended 60-1507 motion filed by appointed counsel was untimely as it had been filed more than 16 months after the mandate was issued. Finally, the State asserted that even if the amended motion were timely, it failed to provide a basis for relief because posttrial affidavits from jurors could not be used to impeach a verdict. Thus, the State asserted there were no grounds for relief under K.S.A. 60-1507 and requested dismissal of the action.

The district court held a hearing on the State's motion to dismiss and on Bengtson's motion under K.S.A. 60-1507. Bengtson's attorney argued the amended motion asserted no new claims and therefore related back to the original filings. In addition, he argued that affidavits should have been obtained from jurors by prior counsel and such evidence would have been admissible under K.S.A. 60-444(a) as bearing on the validity of the verdict as to actions inside or outside the jury room. The court overruled the State's motion that Bengtson's claims were untimely and took the merits of the amended claims under advisement.

Several days later, the district court issued an order in the case, rejecting the State's statute of limitations argument and finding that the amended petition related back to the filing of the original pleadings. With respect to the merits of the amended claims, the district court noted the trial court's reasoning for the denial of Bengtson's motion for new trial and the Court of Appeals' prior reference to the lack of posttrial affidavits from jurors. The court then relied upon the similarity of the January and April 2009 incidents; Bengtson's admission to having committed the latter offense; and the fact that no one present at the jury viewing—including the defendant, defense counsel, and prosecutor—detailed any improper comments made to or in the hearing of the jurors. Accordingly, the court concluded that failing to obtain affidavits from jurors, given no evidence of improper exposure, did not arise to deficient performance. Even if some evidence were shown of jury exposure to comments, the district court found overwhelming evidence of Bengtson's guilt such that defense counsel's acts or omissions likely would not have changed the outcome of the trial or the appeal. Thus, the court found "that the files and records of the case conclusively show plaintiff [was] entitled to no relief" and granted the motion to dismiss on the merits.

Bengtson filed a timely pro se notice of appeal. The State does not cross-appeal from the denial of its motion to dismiss on statute of limitations grounds.

*Did the district court err in finding Bengtson failed to prove his trial counsel was ineffective for failing to obtain affidavits from jurors?*

On appeal, Bengtson argues that the district court erred in rejecting his claims. He notes that although he carried the burden of proof, he needed to show his entitlement to relief only by a preponderance of the evidence. Bengtson's brief argues solely ineffectiveness of trial counsel and, thus, abandons his claims that appellate counsel was ineffective. Bengtson asserts that juror misconduct could serve as grounds for a new trial and that one method for establishing such misconduct was by offering direct evidence

7

through affidavits from or the testimony of jurors. Because he was also required to carry the burden of establishing his right to a new trial, his trial attorney was ineffective and should have known that affidavits from the jurors were needed to support his motion for new trial. Thus, Bengtson contends his trial attorney's failure to obtain such affidavits was ineffective because the State's investigator who accompanied the jurors "may have said" things during transport that would support the State's case and that the newspaper reporter's questions "could have been overheard by the jurors."

*Standard of Review*

A district court has three options when handling a 60-1507 motion:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citations omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

Our standard of review depends upon which of the options the district court utilized. *Sola-Morales*, 300 Kan. at 881.

In this case, the court set the matter for an "evidentiary hearing" and this label was repeatedly used by the district court in notices, orders, and even at the beginning of the hearing. If a full evidentiary hearing is held on a K.S.A. 60-1507 motion, we review the court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of

8

the district court's ultimate conclusions of law is de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013).

Although the parties referred to the hearing as an evidentiary hearing, it was treated more as a preliminary hearing to address the State's motion to dismiss and to determine whether Bengtson had presented a substantial issue. Neither Bengtson nor the State subpoenaed any witnesses, and the court never inquired whether either party had witness testimony to present. The district court's actual treatment of the matter is most like a preliminary hearing in which the court simply hears argument and reviews the records and pleadings. In such a case, the appellate court is in as good a position as the district court to consider the merits. Accordingly, our standard of review is de novo. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

*Ineffective assistance of counsel*

To prevail on a claim of ineffective assistance of counsel, movant must establish (1) that under the totality of the circumstances, defense counsel's performance was deficient, and (2) that a reasonable probability exists that the jury would have reached a different result absent the deficient performance *i.e.*, prejudice. *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

The burden to establish ineffective assistance of counsel under K.S.A. 60-1507 procedures rests on the moving party—the convicted defendant. To meet this burden, a movant's contentions must be more than conclusory; either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). Our scrutiny of counsel's performance is highly deferential, and we presume counsel's conduct is reasonable:

9

"'Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Citation omitted.]" *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011).

*The record/evidentiary basis in this case*

Bengtson's pleadings—both pro se and as amended by counsel—fail to provide any evidentiary basis to establish that counsel was ineffective. Likewise, even if some hint of ineffectiveness can be gleaned from the pleadings, Bengtson has failed to establish that counsel's conduct prejudiced the results in his trial.

Nowhere in Bengtson's pleadings or in the record below was there any evidence that jurors actually heard or were exposed to any conversations occurring during their visit to the crime scene. During the trial and in his posttrial motions, defense counsel simply asserted that jurors *may* have overheard parts of the news reporter's interview with a third party. However, the prosecutor, defendant defense counsel, and a court reporter were present when the jury viewed the scene and none provided any substance about the contents of that interview. Presumably, they did not hear the interview or did not hear anything that would have possibly been a basis for a mistrial; otherwise, defense counsel personally could have provided that information to the court. Nor was any explanation made as to how the jurors may have heard the news reporter's interview when neither the prosecutor, nor the defense attorney, nor the defendant reported hearing anything problematic.

Moreover, although Bengtson asserts that Tracy, the State's investigator, may have said something improper during the transport, the court reporter, whose job it was to

record all statements made, recorded no statements by Tracy other than a comment to someone that "she's supposed to let us in. Apartment two is where Mr. Bengston [*sic*] lived." Bengtson fails to indicate how this statement was improper or to establish that Tracy made other, unrecorded statements.

Bengtson's 60-1507 pleadings fail to fill this gap. Bengtson again fails to identify the content of any conversation the jurors may have overheard at the scene. Nor did Bengtson or his 60-1507 counsel present any evidence from the jurors or others present as to what was said by the news reporter at the scene. Bengtson continues to assert the jurors *may* have heard something that *may* have been prejudicial. Despite the fact he carried the burden of proof in his 60-1507 motion, Bengtson did not attempt to subpoena his counsel or any of the jurors for the scheduled evidentiary hearing to establish more than a mere supposition that something prejudicial was said during the jurors' crime scene visit.

Bengtson has failed to establish any basis for the claim that his counsel was ineffective as there is no evidentiary basis to conclude the jurors were tainted during the viewing of the crime scene. Counsel did ask the judge, at the hearing immediately after having returned from the crime scene, if he could ask the jurors if they had heard any conversations while at the apartment house, and the judge refused that request. Bengtson did not subpoena his trial attorney, so we cannot know whether counsel interviewed jurors after the trial and was unsuccessful in obtaining direct evidence from them to support the claims. Even if counsel failed to contact the jurors, no evidence supports any inference that any discussion the jurors may have overheard had any impact on their verdict in this case. We decline Bengtson's request to speculate on the matter.

Affirmed.

11