NOT DESIGNATED FOR PUBLICATION

No. 123,527

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LARRY GENE OVERMAN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Cherokee District Court; OLIVER KENT LYNCH, judge. Opinion filed March 4, 2022. Affirmed.

*Lucas J. Nodine*, of Nodine Legal, LLC, of Parsons, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and HURST, JJ.

PER CURIAM: Larry Gene Overman appeals from the summary denial of his K.S.A. 60-1507 motion as untimely after the district court found he failed to establish that manifest injustice excused his late filing. Overman argues the district court failed to consider his explanations for why his motion was filed outside the statutory timeline. This court finds Overman's claims unpersuasive and affirms the district court's ruling.

1

In August 2010, a jury found Overman guilty of manufacture of a controlled substance, possession of red phosphorous and iodine, use of drug paraphernalia, possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. The district court sentenced Overman to 324 months' imprisonment. Overman appealed both his convictions and his sentence. A panel of this court affirmed in part, reversed his conviction for possession of drug manufacturing paraphernalia, and remanded for resentencing of his conviction for possession of red phosphorous and iodine. *State v. Overman*, No. 105,504, 2012 WL 6634362 (Kan. App. 2012) (unpublished opinion). Overman then sought review of portions of the panel's opinion, renewing his arguments that his motion to suppress should have been granted and that his convictions for possession of red phosphorous and iodine with intent to manufacture and possession of drug paraphernalia with intent to manufacture were multiplicitous. Our Kansas Supreme Court granted review and affirmed the panel's decision. *State v. Overman*, 301 Kan. 704, 716, 348 P.3d 516 (2015). The mandate for Overman's direct appeal was issued on May 11, 2015.

Over two years later, on September 18, 2017, Overman filed a K.S.A. 60-1507 motion in which he alleged ineffective assistance of his trial counsel and a claim of actual innocence. Before responding to the motion, the State requested a preliminary evidentiary hearing to determine whether Overman could establish manifest injustice excusing the late filing.

Prior to the hearing, Overman filed a "Memorandum in Support of a Manifest Injustice." In this memorandum, Overman asserted that he had unsuccessfully attempted to contact an attorney—Sara Beezley—who had previously represented him and whom he believed had agreed to represent him for the present motion. While Overman had been out on bond for the case underlying the instant K.S.A. 60-1507 motion, he was also

charged with—and ultimately convicted of—similar crimes related to the possession and manufacture of methamphetamine. See *State v. Overman*, No. 105,317, 2012 WL 2045350, (Kan. App. 2012) (unpublished opinion). The district court explained that Overman was able to timely file a pro se K.S.A. 60-1507 motion on that prior case which demonstrated his experience with the process.

At the preliminary evidentiary hearing for the present case, Overman testified that Beezley had begun representing him on his other K.S.A. 60-1507 motion in April 2015, and that he believed that she had agreed to represent him and file the motion for the current case as well. Overman produced letters he had written to Beezley in February and March 2016, in which he asked if she would represent him; he also noted that the deadline to file his K.S.A. 60-1507 motion was soon approaching. Overman received no response from Beezley. Nevertheless, he continued to reach out to her through several letters over the following months, asking about the status of his motion—Beezley never responded either by phone or in writing. Overman included a partially drafted copy of his K.S.A. 60-1507 motion along with one of these letters; he later claimed this was the only copy of his motion. Despite his earlier insistence that Beezley had agreed to represent him and to file his motion—Overman ultimately conceded that she never made any such agreement, he just assumed that she would. He testified, "[w]ell, it was never an actual agreement that, you know, that—she said that she was going to see about representing me on this case as well."

For her part, Beezley testified that she knew Overman intended to file another K.S.A. 60-1507 motion but that she never agreed to represent him on the matter. Rather, she told him she could be appointed to his case after he filed "the appropriate motion" with the court. Beezley further explained that she never responded to Overman's letters because she thought she had "made it clear that if he filed the 60-1507 [the court] would probably appoint [her] and then [she] would help him with it." Overman claimed he had sent his motion to the district court "about a dozen different times" before it was

3

officially filed on September 18, 2017. He argued that the letters he had sent Beezley established that he believed she was representing him and thus, established manifest injustice justifying the late filing. In addition to his one-sided communications with Beezley, Overman also argued that a stroke he suffered in November 2016—allegedly several months prior to the deadline—further contributed to his delay in filing his motion.

After hearing the testimony and argument from the parties, the district court concluded Beezley's account was more credible and found Overman had failed to show that dismissal of his motion as untimely would result in manifest injustice. The court explained:

> "The mandate was entered [May] 11th of 2015, giving the defendant until [May]10th or 11th, 2016, to file his motion. Miss Beezley's testimony is clear that she told him that if he would get a motion on file she would likely be appointed and she would help him with it at that point. Mr. Overman testifies that she never agreed to represent him in this case. Mr. Overman filed a pro se petition in 14-CV-41 for the same kind of relief he's seeking here. He certainly knew how to do it and was capable of getting a petition of some kind on file prior to that date. He simply failed to do so. And the unfortunate incident of his stroke was some almost eight months after the statute of limitations had run so that doesn't affect the establishment of manifest injustice. Likewise all but two of the letters to Miss Beezley are outside that statute of limitations as well. But primarily because there's no agreement that she would represent him and because he had the wherewith all [*sic*] and had demonstrated his ability to file a petition in the other case the court finds no manifest injustice in this case and the Petition will be dismissed."

Overman appeals.

## DISCUSSION

Defendants may collaterally challenge their convictions or sentences through a motion pursuant to K.S.A. 60-1507. A district court has three options when handling such

4

a motion. First, it may summarily deny the motion if it determines the motion, files, and case records conclusively show the requestor is not entitled to relief. Second, if a potentially substantial issue exists the court may hold a preliminary hearing, and if the court subsequently determines there is no substantial issue, it may then deny the motion. Third, the court may determine that a substantial issue exists and conduct a full hearing on the matter. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

This court's appellate review depends on the path the district court followed. When, as here, the district court conducted a preliminary evidentiary hearing to determine whether the movant established manifest injustice, this court first examines the district court's factual findings to determine if they are supported by substantial competent evidence. Such evidence is legal and relevant evidence a reasonable person could accept as sufficient to support a conclusion. *White*, 308 Kan. at 504. Next, an appellate court reviews the district court's legal conclusions and decision to grant or deny the motion de novo, without reweighing the evidence, reassessing the credibility of witnesses, or resolving any conflicts in the evidence; this court gives great deference to a district court's factual findings. *Khalil-Alsalaami v. State*, 313 Kan. 472, 491, 486 P.3d 1216 (2021); *White*, 308 Kan. at 504.

A 60-1507 motion must be filed within one year of a defendant's conviction becoming final—typically counted by the date the mandate was issued which is the conclusion of the movant's direct appeal. K.S.A. 2020 Supp. 60-1507(f)(1). However, a district court may consider a motion filed outside of that timeframe if the movant demonstrates that consideration is necessary "to prevent a manifest injustice." K.S.A. 2020 Supp. 60-1507(f)(2); *State v. Coleman*, 312 Kan. 114, 120, 472 P.3d 85 (2020). The Kansas Supreme Court has defined a manifest injustice as something "'obviously unfair'" or "'shocking to the conscience.'" *White*, 308 Kan. at 496. But the manifest injustice exception is narrower than perceptions of unfairness. Considerations of manifest injustice are limited to two circumstances:  (1) whether the person has provided a compelling

5

explanation why they "failed to file the motion within the one-year time limitation" and (2) whether the person "makes a colorable claim of actual innocence." K.S.A. 2020 Supp. 60-1507(f)(2)(A). If a movant fails to show that dismissal will result in manifest injustice under these circumstances, the district court must dismiss the motion. K.S.A. 2020 Supp. 60-1507(f)(3).

Here, there is no question that Overman untimely filed his motion. The mandate from his direct appeal was issued on May 11, 2015, and Overman did not file his K.S.A. 60-1507 motion until September 18, 2017—over a year beyond the statutory deadline. Accordingly, to avoid dismissal of his motion as untimely, Overman was required to establish manifest injustice by a preponderance of the evidence. See K.S.A. 60-1507(f)(2); *Thuko v. State*, 310 Kan. 74, 81, 444 P.3d 927 (2019); Supreme Court Rule 183(g) (2021 Kan. S. Ct. R. 239).

On appeal, Overman raises four arguments: (1) the district court did not sufficiently consider his explanations for his untimely filing; (2) the district court failed to consider his claim of actual innocence; (3) the district court should have reviewed the merits of his ineffective assistance of counsel claim in determining if he established manifest injustice; and (4) he brings a newly asserted challenge to his sentence on grounds of multiplicity and the identical offense doctrine. None of Overman's claims entitle him to relief.

1. *Overman failed to establish that manifest injustice supports his untimely filing.*

Overman asserts two reasons that constitute manifest injustice for excusing his untimely motion. First, he alleges he attempted to file his motion as early as January 2016—a point he did not raise before the district court. Second, he asserts that his belief that Beezley was going to file his motion and represent him excuses his untimely filing.

6

The district court did not make any factual findings concerning, and there is no record of, Overman's alleged attempts to file his motion prior to the statutory deadline. Although Overman does not contest that his motion was untimely, he now claims on appeal "there are filings in the record evidencing . . . attempts to file the case prior to July 1, 2016." Overman appears to be referring to a Kansas Department of Corrections Account Withdrawal Request in which he requested $6.45 to send a "60-1507 Motion." Overman claims this document shows that he made efforts to file his motion as early as January 4, 2016—a date written at the top corner of the page and next to his signature. But the Withdrawal Request also contains a file stamp and a signature from a Department of Corrections official dated January 5, 2017. Standing alone, without testimony or other evidence from the preliminary evidentiary hearing, it is unclear which of these dates is accurate. Moreover, this court also has no way to know if this withdrawal request referred to the current 60-1507 motion, or one Overman filed in his other case. Additionally, any claim that Overman attempted to file his motion in January 2016 does not comport with his assertion that he sent the only copy of his partial draft of the present 60-1507 motion to Beezley three months later in March 2016. Ultimately, the fact that Overman may have attempted to retrieve funds for postage in January 2016 does little to explain why he failed to file his motion until September 18, 2017.

Overman's second argument for manifest injustice stems from his first—he contends the court failed to sufficiently consider the fact that he made efforts to timely file his motion and believed that Beezley was going to ensure that it was timely filed. Overman argues that, absent this misunderstanding that Beezley would represent him, he would have timely filed his motion. The district court noted that Beezley never agreed to represent him on the instant motion. While Overman initially testified that Beezley agreed to look over his motion and file it for him, he later conceded that Beezley had never actually agreed to file his motion for him. Beezley testified that she told Overman to file his motion with the court and she could then be appointed to the case, and she "thought [she] made it clear to him that he needed to file it."

The numerous letters Overman sent to Beezley—the majority of which were sent after the statutory deadline had already passed—and the inclusion of a draft of his K.S.A. 60-1507 motion may tend to support his contention that he believed Beezley had agreed to represent him and file the motion. But Overman's admission that Beezley never actually agreed to do so undermines his contention that he was honestly operating under this belief. Ultimately, the district court found Beezley's recollection more credible than Overman's belief, which included conflicting testimony. This court will not reconsider the district court's credibility conclusion. See *White*, 308 Kan. at 504; *State v. Adams*, 297 Kan. 665, 673, 304 P.3d 311 (2013). Moreover, the district court's finding that Overman knew about the statutory deadline to file his motion and was capable of filing it is supported by the record. The district court's factual findings and its credibility determination support its conclusion that Overman failed to show how his reliance on Beezley resulted in, precipitated, or caused the delay in filing his K.S.A. 60-1507 motion.

2. *Overman failed to support a claim of actual innocence.*

Next, Overman asserts the district court failed to consider his claim of actual innocence—the second permissible ground under which a defendant may establish manifest injustice. In his "Memorandum in Support of a Manifest Injustice," Overman stated he was making "a coloring claim of his actual innocence" and explained that he had received a letter stating that he had been set up. While Overman maintains the court failed to consider the matter, he did not provide any evidence or argument regarding this claim at the preliminary evidentiary hearing. The only support for his claim comes from two handwritten letters and an affidavit that were attached to his motion which detail the alleged scheme to set him up. While Overman discusses these documents in a letter sent to Beezley in February 2016, he did not assert any argument or present further evidence in his motion or at the preliminary evidentiary hearing.

8

A claim of "actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2020 Supp. 60-1507(f)(2)(A); see *Requena v. State*, 310 Kan. 105, 110, 444 P.3d 918 (2019) (requiring a movant to present evidence of innocence, beyond "mere speculation" contained in a letter). Without corroborating evidence or any testimony supporting his claim—the letters and affidavit attached to Overman's motion do little towards establishing a colorable claim of actual innocence. This is compounded by Overman's failure to address the matter at the preliminary evidentiary hearing, either through his own testimony or that of the affiant or alleged letter writers. As such, Overman's conclusory allegation that he was set up does not provide sufficient grounds to conclude that a jury would reach a different result upon retrial.

3. *This court cannot consider the merits of Overman's ineffective assistance of counsel claims.*

Overman also contends the district court should have considered the merits of his ineffective assistance of counsel claim when determining if he established manifest injustice, i.e., the second *Vontress* factor. See *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014), *superseded by statute as stated in Hayes v. State*, 307 Kan. 9, 14, 404 P.3d 676 (2017). But as our Kansas Supreme Court explained, for cases filed after July 1, 2016, "[t]he plain language of [K.S.A. 60-1507(f)] makes it clear that courts are limited to considering (1) a movant's reasons for the failure to timely file the motion and (2) a movant's claims of actual innocence." *Hayes*, 307 Kan. at 14. Thus, the validity of Overman's claims in his motion, standing alone, could not substantiate a manifest injustice for the purpose of extending the timeline to file his K.S.A. 60-1507 motion. This court is duty-bound to follow Kansas Supreme Court precedent, absent some indication of a departure from a previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Overman makes no such claim, and this court finds no reason to suggest

9

any departure from this plain language interpretation of K.S.A. 2020 Supp. 60-1507(f)(2)(A).

Finally, Overman asserts that a particular argument concerning his convictions for manufacture of methamphetamine and use of drug paraphernalia should have been raised in his direct appeal and that the failure to do so entitled him to relief and an evidentiary hearing. While Overman notes that he has separately raised this claim via a motion to correct illegal sentence, he proceeds to argue the merits of the matter "out of fundamental fairness"—despite the fact it was not included in his K.S.A. 60-1507 motion and does not relate to showing manifest injustice. Even if Overman had raised this claim before the district court and it were appropriately before this court, he has nevertheless failed to show manifest injustice excusing his untimely filing. In other words, absent a showing of manifest injustice to excuse his delayed filing—this court cannot reach the merits of any of Overman's claims.

Overman has failed to carry his burden of proving manifest injustice that would excuse the untimely filing of his K.S.A. 60-1507 motion. The district court did not err in dismissing his K.S.A. 60-1507 motion after the preliminary evidentiary hearing.

Affirmed.