NOT DESIGNATED FOR PUBLICATION

No. 126,103

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JULIO FRAIRE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Submitted without oral argument. Opinion filed April 5, 2024. Affirmed.

*Derek W. Miller*, of Miller & French, LLC, of Liberal, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before WARNER, P.J., ATCHESON and BRUNS, JJ.


PER CURIAM: Julio Fraire appeals the denial of his K.S.A. 60-1507 motion after an evidentiary hearing. He claims his trial attorney provided constitutionally defective representation and the effect of these deficiencies—individually and combined—deprived him of a fair trial. After carefully reviewing the record and the parties' arguments, we agree with the district court that Fraire has not shown that he is entitled to relief. We thus affirm the district court's decision.

1

Fraire was convicted of premeditated first-degree murder and criminal possession of a weapon. He was sentenced to life in prison without the possibility of parole for 50 years—a hard 50—for the murder conviction and another 21 months in prison for the criminal-possession conviction. The Kansas Supreme Court affirmed these convictions on direct appeal. See *State v. Fraire*, 312 Kan. 786, 481 P.3d 129 (2021).

In his direct appeal, Fraire argued that the district court erred when it denied his motion for a mistrial following an incident involving some of the clothes he wore at his jury trial. Fraire explained that the jail initially denied his request to wear his own clothing and provided a striped shirt and blue jeans for the first day of his trial. The jail allowed him to wear his own clothing on other days. But three days after Fraire had worn the jail's clothing, another witness—Rigoberto Diaz, who was accused by another witness of being the shooter—appeared to testify wearing the same clothes the jail had given Fraire. Fraire pointed Diaz's clothes out to his trial attorney, Stephen Ariagno.

Ariagno did not immediately object, and this similarity in clothing was not mentioned by either party in direct or cross-examination or pointed out to the jury. But after Diaz had finished testifying and the court was in recess, Ariagno moved for a mistrial. Ariagno asserted that the similarity in clothing between Fraire and Diaz prejudiced Fraire by undermining his argument that someone else committed the crime. He asserted that the clothing could cause the jury to believe that Diaz and Fraire looked alike and that the witness who originally identified Diaz as the shooter had simply confused their identities. The court denied the motion, finding that Fraire was not prejudiced by the similar apparel.

When Fraire challenged the district court's decision on appeal, the Kansas Supreme Court found that Fraire had not shown that there was "a probability that any

2

error here affected 'the outcome of the trial in light of the entire record.'" 312 Kan. at 791. The court noted that it was "equally possible that, if the clothing produced any prejudicial effect, it was to Fraire's benefit" because "[c]onfusion about the defendant looking like other people would seem to help the defendant's case that it was not he who was seen firing the gun." 312 Kan. at 791.

After the Kansas Supreme Court affirmed his convictions, Fraire filed a motion under K.S.A. 60-1507, challenging several aspects of Ariagno's representation. The district court appointed an attorney to represent Fraire and held an evidentiary hearing so Fraire could produce evidence on these claims. There, Fraire testified about his assertions but called no other witnesses. Two portions of Fraire's testimony are relevant to his claims on appeal.

- Fraire testified about the clothing incident, stating that his family had brought clothes for him to wear on the first day of trial but that the jail did not accept them. Fraire explained that although he had to wear the jail's clothes on the first day, he wore his own after that. Then, on the fourth day of trial, he noticed that Diaz was wearing the same clothes he had worn earlier—a striped shirt and blue jeans. Fraire pointed out the issue to Ariagno, but Ariagno waited until after Diaz had finished testifying before he moved for a mistrial. Fraire explained that he believed that Ariagno should have immediately objected to Diaz appearing in the same clothes when he became aware of the problem. Fraire believed the incident changed the outcome of his trial because "the State was using that [he and the witness] had [a] resemblance" to impermissibly imply he was guilty.

- Fraire testified that Ariagno never provided him with a plea deal, and when Fraire asked Ariagno to pursue one, Ariagno had simply told him that "we're going to trial." Fraire conceded that Ariagno told him that there was no plea deal "on the table" and that Fraire did not know whether the State ever offered one.

After hearing this testimony, the district court denied Fraire's K.S.A. 60-1507 motion. Relevant here, the court found that the clothing incident had already been discussed in Fraire's trial and direct appeal, and "the evidence [did] not support a finding that [Ariagno's] representation was deficient." The court also found that Fraire "understood that there [was] no plea offer on the table" and had failed to prove Ariagno's performance was deficient in that regard. Fraire appeals.

DISCUSSION

When a district court denies a K.S.A. 60-1507 motion after holding an evidentiary hearing—as the district court did here—appellate courts review factual findings for substantial competent evidence, then determine whether those findings support the district court's legal conclusions. *State v. Adams*, 297 Kan. 665, Syl. ¶ 1, 304 P.3d 311 (2013). "Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion." *State v. Talkington*, 301 Kan. 453, Syl. ¶ 3, 345 P.3d 258 (2015). Appellate courts do not reweigh the evidence, assess witness credibility, or resolve evidentiary conflicts. 301 Kan. 453, Syl. ¶ 3. Legal conclusions are subject to unlimited review. *Adams*, 297 Kan. 665, Syl. ¶ 1.

Although Fraire argued in his original motion that his trial attorney, Ariagno, provided constitutionally defective representation in several ways, his appeal only addresses two of those allegations—his claims that Ariagno should have immediately objected when Diaz arrived at court to testify wearing the same clothing Fraire had worn a few days earlier and should have secured a plea deal. Fraire asserts that even if these actions alone do not require reversal, the combined effect of this representation deprived him of a fair trial. He also argues for the first time on appeal that his sentence is illegal under *Alleyne v. United States*, 570 U.S. 99, 114-16, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). We do not find these arguments persuasive.

4

1. *Ineffective assistance of counsel*

The Sixth Amendment to the United States Constitution guarantees criminal defendants "the Assistance of Counsel" for their defense. U.S. Const. amend. VI. This assistance must be "reasonably effective," because the failure to provide effective assistance of counsel deprives a defendant of a fair trial in violation of the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To determine whether an attorney's performance constitutes ineffective assistance of counsel, courts examine whether the attorney's representation was deficient and whether any constitutionally defective representation prejudiced the defendant. 466 U.S. at 687. That is, the defendant must show (1) the attorney's actions were objectively unreasonable under the totality of the circumstances, and (2) but for those actions, there is a reasonable probability that the outcome would have been different. 466 U.S. at 688, 694; *Chamberlain v. State*, 236 Kan. 650, Syl. ¶ 3, 694 P.2d 468 (1985) (adopting *Strickland*).

Under *Strickland*'s effectiveness inquiry, courts' review of an attorney's actions is "highly deferential"; in other words, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Chamberlain*, 236 Kan. 650, Syl. ¶ 3. Courts must examine the representation from the attorney's perspective at the time of trial "'to eliminate the distorting effects of hindsight.'" *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012). Matters of trial strategy, such as what witnesses to call or what motions to file, are decisions for the attorney, and courts will defer to the attorney's discretion. 294 Kan. at 838-39. Other decisions, such as whether a defendant will testify, are ultimately up to the defendant. 294 Kan. at 838.

*Strickland*'s second consideration—prejudice—focuses "'on the fundamental fairness of the proceeding.'" *Balbirnie v. State*, 311 Kan. 893, 900, 468 P.3d 334 (2020). To show a reasonable probability that the outcome would have been different but for an attorney's deficient representation, there must be "'a probability sufficient to undermine confidence in the outcome.'" *Chamberlain*, 236 Kan. at 655.

Fraire argues that Ariagno rendered ineffective assistance of counsel because he did not object when a witness wore the same clothes that Fraire had worn earlier. Fraire argues that the absence of an immediate objection harmed his case because by not objecting, Ariagno "failed to preserve the issue for appeal" and "allowed this issue to continue in front of a jury for days." As we have indicated, to succeed on this claim, Fraire was required to show that Ariagno's performance fell below an objectively reasonable standard and that, had the attorney objected earlier, there was a reasonable probability that the result would have been different. See *State v. Evans*, 315 Kan. 211, 217-18, 506 P.3d 260 (2022). The district court found that Fraire had not made either showing.

We note that Fraire's brief is unclear as to the exact action he believes Ariagno should have taken at trial. At bottom, he believes Ariagno should have alerted the court to the clothing matter before he did—at the conclusion of Diaz's testimony. But there may have been a sound reason for the delay, such as an effort to avoid drawing the jury's attention to the similarities. Or the attorney may have believed—as the Kansas Supreme Court discussed in its opinion—that Fraire could have derived some benefit from Diaz and Fraire wearing the same clothes because Fraire claimed that a witness had mistaken him for Diaz. We do not know Ariagno's rationale, as Fraire did not call the attorney to testify at the evidentiary hearing on his K.S.A. 60-1507 motion.

That said, we need not analyze the reasonableness of the attorney's actions in moving for a mistrial instead of objecting because the Kansas Supreme Court found on

direct appeal that the fact that Fraire and Diaz wore the same clothing on different days of the jury trial did not affect the outcome of Fraire's trial. See *Fraire*, 312 Kan. at 791. As such, Fraire cannot make the required showing under *Strickland* that Ariagno's handling of that incident prejudiced him. The district court did not err when it found this claim was without merit.

Fraire also argues that Ariagno rendered ineffective assistance by failing to secure him a plea deal with the State. As Fraire notes, the Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). As a general rule, an attorney representing a defendant in a criminal case "has the duty to communicate [to the defendant] formal [plea] offers from the prosecution." *Missouri v. Frye*, 566 U.S. 134, 145, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012). But a defendant has no right to be offered a plea deal, and there is no requirement for the State to offer a plea. See 556 U.S. at 148.

Fraire has not offered any evidence that the State communicated a plea deal to Ariagno. Rather, Fraire testified at the evidentiary hearing that Ariagno told him there was no deal "on the table." The district court concluded, based on this evidence, that Fraire had not shown that Ariagno's representation was defective. This finding is supported by substantial competent evidence in the record.

In his final argument concerning Ariagno's representation, Fraire asserts that the *combined* effect of not objecting to the clothing incident earlier or obtaining a plea deal affected the outcome of his trial. When we review an allegation of cumulative error, we examine the entire trial record to assess the aggregate effect of multiple errors. See *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). But here, we have found that Fraire failed to demonstrate any error in plea negotiations, so Fraire has not identified any errors that might accumulate. While Fraire makes a passing reference to two other actions by his attorney—mentioning the attorney should have preserved an

7

unrelated argument for appeal and should have done more to prepare for Fraire's defense—he does not discuss these allegations in any meaningful way that can be considered on appeal. See *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018) (issues only incidentally raised in a brief and not argued are deemed abandoned). In short, Fraire has not shown that Ariagno's actions, individually or combined, prejudiced the outcome of Fraire's trial.

The district court did not err in denying Fraire's allegations of ineffective assistance of counsel.

2. *Legality of Fraire's hard 50 sentence*

In his final argument on appeal, Fraire asserts that the district court imposed an illegal sentence by sentencing him to 50 years in prison without the possibility of parole without any factual findings by the jury. See *Alleyne*, 570 U.S. at 114-16. An illegal sentence is one that does not conform to the applicable statutory provisions, either in character or the term of punishment. K.S.A. 22-3504(c)(1); *State v. Mitchell*, 315 Kan. 156, 158, 505 P.3d 739 (2022).

Fraire relies on *State v. Soto*, 299 Kan. 102, 122, 322 P.3d 334 (2014), a Kansas Supreme Court case that declared the then-existing hard 50 sentencing scheme, K.S.A. 21-4635 et seq., unconstitutional under *Alleyne*. But Fraire's reliance on that case is misplaced. The legislature amended the hard 50 statute shortly after *Alleyne* was decided, and the new statute was in place when Fraire was sentenced. K.S.A. 2015 Supp. 21-6620. Under that amended sentencing statute, a hard 50 sentence is the default sentence for premeditated first-degree murder. Thus, the district court did not need to engage in any factual findings once the jury had returned a verdict for that offense. The district court did not impose an illegal sentence when it sentenced Fraire under that statute.

Affirmed.