NOT DESIGNATED FOR PUBLICATION

No. 116,220

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NATHAN D. SMITH,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Bourbon District Court; MARK ALAN WARD, judge. Opinion filed August 4, 2017. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and SCHROEDER, JJ.

*Per Curiam*: Nathan D. Smith filed a pro se K.S.A. 60-1507 motion in Bourbon County District Court which the court also interpreted as a motion to withdraw his plea. After an evidentiary hearing, the district court found that Smith failed to provide sufficient evidence to demonstrate that his trial attorney was ineffective or to demonstrate that he should be allowed to withdraw his plea. Finding no error, we affirm.

1

*Appointment of trial counsel*

Smith was charged in Bourbon County, Kansas, with four counts of aggravated indecent liberties with a child, an off-grid person felony, pursuant to K.S.A. 2012 Supp. 21-5506(b)(3)(A), (c)(3). At Smith's first appearance hearing, the district court asked if he could afford an attorney, to which he replied he could not. The district court explained that one would be appointed for him, but that there would be certain fees involved that he would be expected to pay; he said he understood that. After the district court's reading of the charges, the State added that the minimum penalty for the crimes was a life sentence with the possibility of parole after 25 years and requested that the court inform Smith of that fact as to each of the counts. The court stated to Smith the possible penalty as to each count. Robert E. Myers was appointed to represent Smith during his criminal trial.

Myers filed several pretrial motions:  for production of evidence; to reduce bond; and for a criminal history report. He requested and was granted a preliminary hearing date to allow him 6 to 8 weeks to go through discovery and meet with Smith. Smith later waived his right to a preliminary hearing.

*Plea agreement and hearing*

Approximately 3 months after the charges were filed, a petition to enter plea agreement consisting of eight pages was filed. Certain portions of the document were handwritten, certain statement options were circled, paragraphs and certain statements within the paragraphs were marked with a check or "N/A," and in some places handwritten changes were made and initialed "NDS." The petition to enter plea indicated that Smith was 51 years old at the time of the plea, and he completed high school but no college. Throughout the document, Smith acknowledged that he understood the charges,

2

possible penalties, the proceedings, and that his lawyer had fully informed him, counseled him, and advised him of the nature of each charge, all lesser included charges, and all possible defenses. He acknowledged that Myers informed him that the plea could subject him to a maximum punishment of "25 years to Life" plus fines and restitution. The written plea agreement acknowledged that the sentence he would receive was solely within the control of the district judge, who was not bound to the terms of the agreement.

In paragraph 15 of the plea agreement, the initials "NDS" appear next to three places where the words "no contest" were stricken, and the word "Guilty" was added so the paragraph read, in part:  "My plea of Guilty is the result of a plea agreement . . . . Since my plea of Guilty is the result of a plea agreement . . . it is my understanding that I will enter a plea of Guilty to Count III in case number 13 CR 18, and the State will dismiss the remaining counts." The sentence, "Further, at the time of sentencing the State of Kansas will recommend a standard sentence of the grid box for the category I fall in," is stricken, and the initials "NDS" appear at the end of the strike. Portions of the document also reflect that Smith was satisfied with the advice and help received from his attorney.

Paragraph 18 states:  "My mind is clear, I am not under the influence of alcohol or drugs, and I am not under a doctor's care. The only drugs, medicine or pills that I took within the past seven (7) days are:  [handwritten] yes Blood Pressure & cholesterol & aspirin." The agreement went on to reflect that Smith had never been diagnosed or institutionalized for mental illness, and that he knew of no reason why his mental competence at the time of his crimes or at the then-present time should be questioned; no exceptions to this statement were indicated. The plea agreement further affirmed that he "freely and voluntarily" entered his plea, and it was not entered as the result of force, threats, or promises.

The plea agreement concluded: "I swear that I have read, understood, and discussed with my attorney each and every part of this Petition to Plead 'GUILTY' or 'NO CONTEST,' and that the answers which appear in every part of this petition are true and correct." The document was signed and sworn to by Smith in open court, and after Smith's signature are the initials "NDS," which appear consistent with the handwriting of the signature, as well as the previous "NDS" initials throughout the document.

At the April 16, 2013, plea hearing, the district court asked Smith if the court was correct in reading the petition as his intent to plead guilty to Count III of aggravated indecent liberties with a child; Smith replied, "Yes, sir." The district court told Smith that before he was asked to enter his plea, the court was going to tell him about his rights, the consequences of a guilty plea, and the potential penalties; the court also told him that it was going to ask him some questions and so was going to place him under oath:

> "THE COURT: You do solemnly swear that the statements you [make] during the course of this hearing shall be the truth, the whole truth, and nothing but the truth, and you further acknowledge and swear that you have read and discussed with your attorney each and every part of the petition to enter a plea agreement and that the answers which appear therein are true and correct, so help you God?
> "[SMITH]: Yes."

The court asked Smith again about his ability to read, write, and understand the English language, to which Smith replied, "A little bit, not much, I was in special ed classes all the way through [12th grade]." Smith did, however, graduate from high school. Smith then confirmed that it was his signature at the end of the plea agreement, and that before he signed it, he went through it with Myers and understood everything contained in it. He indicated to the court that he did not have any questions. Myers offered that the checkmarks at the end of the paragraphs in the agreement signified that he went through that information with Smith and that Smith understood those provisions; Myers opined that Smith understood "everything that was contained in that petition." Again, the court

4

turned to Smith: "And, Mr. Smith, you indicated you understood everything that was in a petition; is that correct?" to which Smith replied, "Yes."

The district court then explained Smith's rights to him: the presumption of innocence; the right to a speedy and public trial; the burden is on the State; the right to confront witnesses; the right to call witnesses on his behalf; the right to testify or not testify on his own behalf; he could not be forced to testify; if found guilty after a trial, he could request a new trial; and the right to appeal any conviction to a higher court. Smith indicated he understood his rights. Smith indicated that he understood that he would be waiving all of these rights by entering a plea of guilty.

At that point, the district court informed Smith that there were consequences for entering a guilty plea: he would not get to have a trial to a jury or the bench; in admitting to one of the charges, it would be viewed as true and he would give up any defenses to that charge; he would be found guilty, the same as if a jury or the court had decided that after a trial; and he would be giving up his right to appeal his conviction to a higher court, but that he may still be able to appeal his sentence. Smith indicated that he understood the consequences of his intended plea.

The court explained to Smith that the crime to which he was intending to plead guilty carried a term of imprisonment for life with a mandatory minimum term of imprisonment of 25 years, plus fines of up to $500,000. Smith acknowledged he understood. Smith told the court that no promises were made to him, including regarding what his sentence would be, and he was not threatened or forced to enter the plea. "In other words," asked the district court, "Mr. Smith, you're doing this freely and voluntarily?" Smith replied, "Yes." Again, Smith stated he understood the penalties and consequences for his offense.

Smith indicated he did not suffer from any mental or emotional disorder affecting his ability to understand his rights, and he disclosed to the court that he was taking some medication: "I'm taking blood pressure pills. I'm taking baby aspirins and, huh, cholesterol—for my heart." Smith indicated to the judge that his medications did not, in any way, affect his ability to understand what he was doing by entering his plea. He had not consumed any alcohol or illegal drugs in the previous 48 hours.

Smith told the court that he had sufficient time to discuss his case with Myers and was satisfied with his representation. When the court asked him if he had any questions he wanted to ask Myers or the court, he replied, "No, I don't." At that time, Smith told the court that he was entering a plea of guilty because he was, in fact, guilty of the crime as charged. Smith acknowledged that the State's evidence, if he went to trial, would demonstrate that his conduct and admissions supported findings of guilty on the crimes as charged. The district judge accepted Smith's plea:

> "[I] find that the defendant is mentally competent. His plea of guilty [is] made freely and
> voluntarily and that he does so with the full understanding of its consequences and not
> out of ignorance, fear, inadvertence, or coercion. [I] further find that the defendant has
> admitted the essential factual elements of . . . the crime. Accordingly, [I] accept the
> defendant's plea of guilty and judge the defendant guilty of Count 3 of the information:
> Aggravated indecent liberties with a child in violation of K.S.A. 21-5506, an off-grid
> person felony."

The State moved to have the remaining three counts dismissed.

*Sentencing*

Two months after his plea the parties returned for and requested that the court follow the plea agreement by giving Smith a sentence of 25 years to life per the plea agreement. When given the opportunity to say something on his own behalf, Smith

stated, "I know I just want to apologize to my family and the girl. I don't know what else to say." The district court sentenced Smith in accordance with the plea agreement to the "mandatory minimum term of imprisonment not less than 25 years." The district judge informed Smith that he would get credit for the time he already served, and said, "I've already given you the notice of duty to register; that's a lifetime registration requirement. You'll have lifetime post-release supervision."

*Postsentencing motions and procedure*

Myers filed a notice of appeal on Smith's behalf. The district court issued an order appointing the appellate defender office to represent Smith during his appeal.

Approximately 1 week after sentencing, Myers filed a motion to withdraw as counsel. Smith filed a pro se objection to Myers' motion to withdraw because Smith wanted Myers to represent him in his appeal.

Approximately 2 weeks after sentencing, Myers filed—at Smith's direction—a motion to withdraw his plea of guilty. In this motion, Smith claimed that Myers "made him sign the plea agreement by force," that "he was coerced into signing the plea agreement against his will," and that "his plea in this matter was not knowingly, freely or voluntary [made]." Smith requested that he be allowed to withdraw his guilty plea and allow him to proceed to trial. The court appointed Andrew L. Bolton to represent Smith on his motion to withdraw his plea.

At the hearing on Smith's motion to withdraw his plea, Bolton was present with Smith, as was Myers, whose motion to withdraw from the case had not yet been resolved. The court informed the parties that it had treated Smith's motion as two issues: a motion to withdraw his plea; and a motion alleging ineffective assistance of counsel. When the district court inquired if Smith wanted to proceed, Bolton replied:

7

"Your Honor, me and Mr. Smith have talked on a couple of occasions now about the different possibilities and scenarios that would play out if Mr. Smith was allowed to withdraw the plea.

"Based on what we talked about, specifically that it's our understanding that the State, if the Court would allow Mr. Smith to withdraw his plea, the State would reinstate all charges previously filed against Mr. Smith. Mr. Smith does not want to go forward with the withdrawing his plea at this time."

The district court asked Smith if Bolton's summary of his wishes was correct, to which Smith said, "Yeah."

Bolton requested and was granted a recess to discuss with Smith whether he wanted to proceed with the allegation that Myers had been ineffective as his trial counsel. When asked if Bolton had a chance to discuss the issue of Myers' alleged ineffectiveness with Smith, Bolton replied:

"I did, Your Honor. And specifically looked at a couple of things. I went—I pulled out the petition to enter a plea agreement that has previously been filed in this court. I noted there were check marks by each paragraph in that plea agreement. I talked to Mr. Smith about those check marks, and I also noticed that he [Smith] initialed several paragraphs. He indicates to me that Mr. Myers, and him went through this agreement paragraph by paragraph. Mr. Smith did indicate that he understood what the plea agreement was to mean and that the plea was accurate and overall he was satisfied with Mr. Myers' services. He hasn't told me anything to make me think he wants to proceed with ineffective assistance of counsel."

The court then asked if Smith was withdrawing any claim of ineffective assistance of counsel, to which Bolton replied, "I believe so, Your Honor." The court turned to Smith and asked, "And is that correct Mr. Smith?" to which Smith replied, "Yes." The district court also noted on the record that it had gone through "a lot of questions" with Smith at his plea hearing, and swearing Smith in before asking him those questions; the court

8

reiterated the questions it asked Smith regarding his understanding of the penalties and consequences of taking a plea, whether he had sufficient time to discuss his case with Myers, and whether he was satisfied with Myers' representation of him, and that Smith had affirmed his understanding of the issues and his satisfaction with Myers. The court then allowed Smith to withdraw both his motion to withdraw his plea and his motion alleging ineffective assistance of counsel.

The district court then addressed Myers' pending motion to withdraw from the case and Smith's objection to that. The court explained to Smith that the appellate defender office would be helping him with his appeal of his conviction and sentence. The court asked Smith if he had any objection to allowing Myers to withdraw, to which Smith replied, "Robert was a good man to me and everything, and I liked him. If he wants to go ahead and withdraw that's fine." The court then granted Myers' motion to withdraw. At Bolton's request, he, too, was allowed to withdraw.

*Direct appeal*

On direct appeal, this panel affirmed Smith's sentence of imprisonment for life with a mandatory minimum sentence of 25 years but vacated the imposition of lifetime postrelease supervision. *State v. Smith*, No. 110,846, 2014 WL 4435907, at *1 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1020 (2015) (court did not have authority to order lifetime postrelease supervision in conjunction with an off-grid indeterminate sentence).

*New motion arguing ineffective assistance of counsel*

A few months prior to the decision on his appeal, and nearly 2 years after sentencing, Smith filed another motion alleging ineffective assistance of trial counsel; he claimed there was manifest injustice and alleged Myers "lead[] him into a plea," and in

9

doing so violated numerous rules of professional conduct. Smith made several accusations about Myers' conduct during his representation, and specified that, in sum: Smith's motion to withdraw his guilty plea, as written by Myers, was "too vague and shallow," which he claimed amounted to "deliberate sabotage"; when Smith tried to fire Myers, Myers filed a "bogus 'Plea Withdraw'" so he could still get paid; there was "no real evidence" against him, and so Myers aided in convicting Smith; Myers forced him to sign the plea while Smith was "under heavy medication of tranquilizers," and so he would not have to take the case to trial, "in order to get the same payment from the State whether he took the case to trial or had his client take a false plea"; he did not commit the crimes; he did not understand the terms of the plea agreement; and Myers forced him to lie and plead guilty.

In his motion, Smith also alleged ineffective assistance of appellate counsel for not arguing in his direct appeal that Myers had been ineffective as trial counsel. He claimed that had his counsel on appeal made the argument that Myers was ineffective, he would have been able to withdraw his guilty plea. Smith stated that these grounds for his motion were not previously asserted in any other court or motion previously filed. The district court reappointed Bolton to represent Smith on his K.S.A. 60-1507 motion.

Subsequently, Smith filed a pro se motion for new counsel, claiming a conflict of interest existed with Bolton because "Defendant has ineffective assistance of counsel claims against Attorney Andrew Bolton." The district court then reappointed the appellate defender office to represent Smith on his K.S.A. 60-1507 motion.

The district court convened an evidentiary hearing on Smith's 60-1507 motion, which was also construed as a motion to withdraw Smith's plea. Smith appeared in person and with his court-appointed attorney, Geoffrey Clark.

10

The State introduced into evidence the testimony of Myers, the plea agreement, the transcript of the plea hearing, the transcript of the hearing on Smith's initial motions to withdraw plea and ineffective assistance of counsel, and a letter from Myers to Smith outlining the plea agreement.

Myers testified that he had a system he used with many of his clients, which consisted of reading the proposed plea agreement, paragraph by paragraph, explaining concepts, rights, penalties, and other issues, seeing if they had any questions, and then signifying their understanding by placing a check mark at the end of the point discussed. Myers testified:

> "[I]f I had a belief either that [Smith] did not understand what he was doing, did not understand the consequences of what he was doing, or there were questions that he raised during our discussions, then we would not have proceeded by entering a plea at that time.
>
> "I mean, there was ongoing plea negotiations, . . . and so, that was the result of the plea agreement, signing that, and when we presented that to the Court at the time I felt he understood it; understood the consequences and done it freely and voluntarily."

Myers was aware that Smith was enrolled in "special education" classes throughout his schooling, but he graduated high school. Myers testified he received letters signed by Smith, and he assumed Smith wrote them. He explained that even if Smith had not understood the letter outlining the potential plea agreement, they sat down and went through it together; Myers believed that based on their conversations, Smith understood the content of the plea agreement. Again, Myers stated that the check marks reflected that they went through the plea agreement, line by line, and signified Smith's understanding. Myers explained that he did more than just read each paragraph to Smith to elicit a yes/no as to whether he understood it; Myers would explain, *e.g.*, what a jury is, what they do, and if Smith entered a plea, then he would not have that. Myers did not have Smith "regurgitate" what he told Smith about each paragraph.

11

Under cross-examination, Myers testified that he never had Smith evaluated for competency to stand trial or for mental capacity:

"[MYERS:]  There's nothing with my interactions with him during this process that led me to believe that he was somehow not competent to stand trial. And competent to stand trial is a much different standard than what is your reading comprehension level. I mean, just because a person has a lower reading comprehension level doesn't necessarily mean they are not competent to stand trial. It just means I need to go through and read paragraph by paragraph in the potential plea agreement with my clients and make sure [Smith] understands it.
"[THE STATE:]  And you did that in this case, where you did line-by-line?
"[MYERS:]  Yeah, and that's why the checks—I mean, that—you know, if there is a question about it or to make sure that I put those checks so I can recall if it becomes an issue. I went paragraph by paragraph and read it to my client."

Other than his testimony, Smith presented no evidence in support of his motions. Smith testified that he does not read well. He read into the record a portion of a letter from Myers:  "I had the opportunity to discuss your case with the County attorney and the—," but he testified that he could not read the word "'potential.'" He testified that he was not aware of ever being diagnosed with a reading disorder. He said he "was in special ed all the way through twelfth grade." Clark asked Smith, "[D]o you have trouble understanding difficult concepts?" to which Smith answered, "Yeah." Smith testified that Myers did not explain his rights to him prior to entering into the plea agreement and that Myers did read him the paragraphs in the plea agreement stating his rights but "I didn't quite understand what they meant." Smith testified that he understood that if his plea is withdrawn, the State will reinstate the other three counts of aggravated indecent liberties with a child, and "[i]f I don't beat that, then I'll never get out." He stated, "I might as well give it a try." Clark asked:

"[CLARK:]  You are sitting on a 25-year life sentence; is that correct?
"[SMITH:]  Yeah.

12

"[CLARK:]  And you're how old now?

"[SMITH:]  I'll be 54 in December.

"[CLARK:]  And you've been in for how long?

"[SMITH:]  It will be four years in January.

"[CLARK:]  "So, you will be 74-75?

"[SMITH:]  Seventy-six.

"[CLARK:]  Seventy-six when you're eligible for parole?

"[SMITH:]  Yeah."

Under cross-examination, Smith admitted that he answered all of the questions posed by the judge at his plea hearing to indicate he understood his rights, waivers of those rights, penalties, and was satisfied with his attorney; and, likewise, indicated he had no questions, had not been coerced, and was not on any medications that affected his ability to understand.

The district court addressed the difficulty of explaining concepts in court and explained its process of putting defendants under oath in such circumstances. The court reminded Smith that he was placed under oath, which Smith remembered. Going through each of the questions the district judge asked Smith during his plea hearing, he told Smith that "all I can do is rely upon the answers in my courtroom based on my questions, especially after I place you under oath. So you answered 'yes [you understood].'"  The district judge reminded Smith it gave him multiple chances to let the court know if he was confused. The district judge pointed out that "absolutely no evidence" was presented to support Smith's allegation that he had been on any type of medications that affected his ability to understand at the time of his plea hearing. The district judge then said, "The point I'm making, Nathan, is there was a bunch of opportunities where you could have stopped me and said, Judge, I don't understand. Judge, I don't want to do this. I want to go to a jury trial." Further, the district court referenced Smith's initial motion to withdraw his plea and the varied opportunities he had to address his concerns and any confusion.

13

The district court denied Smith's claim of ineffective assistance of counsel and his motion to withdraw his plea based on insufficient evidence to support the claims. Citing the transcripts admitted into evidence at the hearing, the court stated that there were numerous occasions where Smith had an opportunity to stop the process at any time he wanted to do so. "His responses to the Court at the plea hearing are clear that he was doing this freely and voluntarily." Further, the district court found that there was insufficient evidence to support Smith's contentions that Myers was ineffective, "in fact, Mr. Myers' petition to enter plea is probably what all defense attorneys should use—that form where they check every paragraph that they've gone through with the defendant."

Through counsel, Smith filed a timely notice of appeal from "the findings of the court and all adverse rulings." Smith also filed a pro se notice that he wished to appeal "denying his petition for relief under K.S.A. 60-1507."

ANALYSIS

Smith contends that he received ineffective assistance of trial counsel because Myers did not adequately explain the plea agreement to him, and that because of this, he should be allowed to withdraw his plea and proceed to trial. The district court interpreted Smith's motion to be both a K.S.A. 60-1507 motion and a motion to withdraw his plea. Smith does not argue that the district court erred in its interpretation of his motion. Smith alleges that the court erred in denying his motions. So we will proceed directly to the motions.

*Smith's motion under K.S.A. 60-1507 for ineffective assistance of counsel was properly denied.*

To be entitled to relief under K.S.A. 60-1507, the movant must establish by a preponderance of the evidence either: (1) "the judgment was rendered without

14

jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 60-1507(b) (grounds for relief); Supreme Court Rule 183(g) (2017 Kan. S. Ct. R. 222) (preponderance burden). Without explicitly stating as much, Smith's appeal argument suggests that Myers' alleged ineffectiveness led to a denial or infringement of his constitutional right to trial. The district court conducted a full evidentiary hearing on Smith's motion.

In reviewing the hearing, we review the court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013). Substantial competent evidence is evidence that possesses both relevance and substance and that furnishes a substantial basis of fact from which the issues reasonably can be resolved. *State v. Brown*, 300 Kan. 542, 546, 331 P.3d 781 (2014). At the 60-1507 hearing, the district court considered Smith's testimony, Myers' testimony, documentary evidence, and transcripts from prior relevant proceedings, and concluded that Smith failed to provide sufficient evidence to support his claim that Myers provided ineffective assistance of counsel.

To prevail on his claim of ineffective assistance of counsel, Smith must establish (1) the performance of defense counsel Myers was deficient under the totality of the circumstances, and (2) Smith was prejudiced by counsel's deficiency, *i.e.*, that there is a reasonable probability that a jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

15

Regarding the first prong, judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). Then, to establish the second prong of prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Smith contends that Myers was deficient because he did not explain the plea agreement to Smith in a way that he could understand it, given his cognitive impairment. This suggests three issues: whether Smith was impaired; whether Myers should have known that; and if so, what accommodations should Myers have made to effectively communicate with Smith. This court must start with the presumption that Myers' conduct in advising and informing Smith was proper. See *Kelly*, 298 Kan. at 970. The burden is on Smith to demonstrate that Myers was deficient under the totality of the circumstances. See *Sola-Morales*, 300 Kan. at 882.

The record demonstrates fairly consistently that Smith is not a confident reader; to what degree he has a reading impairment varies throughout the record, even within Smith's own statements. The record reflects that while Smith consistently said he did not read well, he never told the court until his 60-1507 hearing that he could not grasp complex concepts. Nevertheless, he demonstrated he could read words such as "opportunity" and answer questions within the appropriate context. Further still, in that hearing, he testified that although he claimed he did not understand the consequences of entering a plea of guilty, he did understand the consequences of being allowed to withdraw that plea.

16

The same district judge sat for all of the proceedings in this case and possessed a contextual knowledge of the case. For example, the judge would have been aware of Smith's contextual responses, showing no hesitation or confusion, to the judge's questions at any of those proceedings (*e.g.*, when, at his first appearance, Smith virtually admonished the court for asking him twice if he could afford an attorney). The judge would have recalled a status hearing prior to his plea when it, with the support of the State, stopped the proceeding to accommodate the retrieval of Smith's reading glasses, demonstrating the willingness to ensure he would not be at a disadvantage. And, at his 60-1507 hearing, the judge observed Clark's request that Smith's hands be freed so that Smith could write notes and review documents. Alternatively, the only evidence Smith presented to demonstrate his cognitive impairment was his testimony. He acknowledged that he had never been diagnosed with a reading impairment. The court acknowledged Smith's reading difficulties and adjusted some of its standard procedures to account for that circumstance; however, the court in its ruling, without explicitly stating as much, rejected Smith's claim that he was of a lower intellect and did not understand what was happening around him at his plea hearing.

Myers testified that he was aware of Smith's enrollment in special education classes through high school but was also aware that Smith graduated. Myers also testified that he received correspondence signed by Smith throughout his representation of Smith and that Myers believed it was Smith who wrote the letters. Additionally, Myers testified that it was because of his awareness of Smith's "special ed" experiences that he chose to move through the plea agreement with Smith in a careful and meticulous fashion. Besides offering contradictory testimony regarding whether he did or did not understand his rights, Smith offered no evidence to refute Myers' testimony on this or any other point. The court stated that Myers' methods were an example to other defense attorneys.

The record on appeal does not support Smith's contention that he was impaired to the degree that he did not understand the consequences of entering into the plea

17

agreement. Under the totality of these circumstances, Smith did not demonstrate that Myers was deficient in his representation. Unable to demonstrate deficiency, Smith cannot establish prejudice. See *Sola-Morales*, 300 Kan. at 882. The district court's decision to deny Smith's 60-1507 motion was based on substantial, competent evidence and supported the court's legal conclusion that Smith's counsel was not ineffective.

*Smith's motion to withdraw his guilty plea was properly denied.*

Appellate courts review postsentence motions to withdraw pleas for an abuse of discretion. *State v. Moses*, 296 Kan. 1126, 1127, 297 P.3d 1174 (2013). Smith claimed that because Myers was ineffective, he did not knowingly and voluntarily enter into his guilty plea. As Smith's claim that Myers was ineffective is not supported by substantial, competent evidence, there is no foundation for an argument that the district court abused its discretion in denying Smith's motion to withdraw his guilty plea.

*Remand is not necessary for further findings by the district court related to Smith's claim that appellate counsel was ineffective.*

Smith argues that the case should be remanded because the district court failed to address his claim that his appellate counsel for his direct appeal was ineffective. While the district court did rule in its order that Smith's motion of ineffective assistance of counsel was denied as to *both* trial and appellate counsel, there is little else in the record on that issue. Smith is correct that Supreme Court Rule 183(j) (2017 Kan. S. Ct. R. 222) requires the district court to make findings of fact and conclusions of law after an evidentiary hearing on all issues presented in a K.S.A. 60-1507 motion. See *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007). If, taken together, the district court's findings and conclusions in the journal entry and its oral expressions at the time of the hearing are sufficient for an appellate court to discuss and act on a movant's arguments, then remand is not required. See *Robertson v. State*, 288 Kan. 217, 233, 201 P.3d 691

18

(2009). Whether a district court's findings of fact and conclusions of law comply with Rule 183(j) is a question of law that is reviewed de novo. 288 Kan. at 232.

The problem here is that Smith put on no evidence regarding the ineffectiveness of appellate counsel at his 60-1507 hearing. Further, he points to no additional supporting evidence in his appeal brief. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Sprague*, 303 Kan. at 425. Likewise, failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015).

Moreover, as Smith's claim that Myers was ineffective is not supported by substantial competent evidence, there is no foundation for an argument that the appellate counsel was ineffective for not raising the issue on appeal. While the district court's order was brief, it addressed both motions; coupled with the district judge's oral expressions at the time of the hearing, as detailed above, the findings and conclusions are sufficient for this court to discuss and act on Smith's arguments. Remand is not warranted.

*Smith has failed to properly preserve any issue related to the failure of the district court to order a competency evaluation.*

Smith contends for the first time on appeal that the district court should have *sua sponte* ordered a comprehensive competency evaluation, pursuant to K.S.A. 2016 Supp. 22-3302. However, issues not raised before the trial court cannot be raised on appeal. See *State v. Williams*, 298 Kan. 1075, 1083-84, 319 P.3d 528 (2014). There are several exceptions to this general rule: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal

despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). An appellant is required to explain why an issue that was not raised below should be considered for the first time on appeal. Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34). This rule is strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Smith fails to explain why this should be considered for the first time on appeal. He makes no claim that any of the three *Phillips* exceptions apply. Accordingly, his claim fails.

Affirmed.