NOT DESIGNATED FOR PUBLICATION

No. 120,800

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KENNETH E. WADDELL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed May 15, 2020.
Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before ATCHESON, P.J., WARNER, J., and WALKER, S.J.

PER CURIAM: Following a second jury trial in 2008, Kenneth E. Waddell was
convicted of two counts of rape, three counts of aggravated indecent liberties with a
child, one count of aggravated criminal sodomy, one count of aggravated indecent
solicitation of a child, and one count of criminal threat. On appeal, a panel of this court
affirmed Waddell's convictions of two counts of rape, one count of aggravated indecent
liberties with a child, and one count of aggravated indecent solicitation. The panel
reversed the remaining convictions and remanded the case to the district court with
further directions. In May 2011, the State voluntarily dismissed the remaining counts, and

1

the district court ordered Waddell to serve the remainder of his 330-month sentence. Waddell later filed a motion pursuant to K.S.A. 60-1507 alleging, among other things, various ineffective assistance of counsel claims. Following an evidentiary hearing, the district court denied Waddell's motion, and Waddell timely appealed. Because we find that Waddell failed to meet his burden to show that his trial counsel's performance was deficient, we affirm the district court's ruling.

FACTS

This case has a long history in our court, having been here four previous times in various postures upon direct appeals Waddell filed. Our opinion here will merely summarize just enough salient facts to place Waddell's K.S.A. 60-1507 motion in context. Further factual details about the underlying criminal case and our court's prior decisions are contained in *State v. Waddell*, No. 92,378, 2006 WL 1379576 (Kan. App. 2006) (unpublished opinion) (*Waddell I*), and *State v. Waddell*, No. 100,517, 2011 WL 767836 (Kan. App. 2011) (unpublished opinion) (*Waddell II*).

In April 2003, Waddell was charged with two counts of rape, three counts of aggravated indecent liberties with a child, one count of aggravated criminal sodomy, one count of aggravated indecent solicitation of a child, and one count of criminal threat. The victim was Waddell's next-door neighbor, J.J., a girl who was 5 years old when the incidents leading to Waddell's convictions started. Waddell's convictions on all eight charges at his first jury trial were reversed by a panel of our court as a consequence of the State's use of inadmissible evidence. *Waddell I*, 2006 WL 1379576, at *1, 14. Following a second jury trial in February 2008, Waddell was again convicted on all eight counts. On April 7, 2008, the district court sentenced him to 330 months in prison, and Waddell again appealed his convictions.

2

Our court affirmed Waddell's convictions for two counts of rape, one count of aggravated indecent liberties with a child, and one count of aggravated indecent solicitation resulting from the second jury trial. However, it reversed the remaining convictions—noting that Waddell's 330-month sentence was not affected by the ruling—and remanded the case to the district court with instructions to conduct further proceedings consistent with its opinion. *Waddell II*, 2011 WL 767836, at *6-7. Pursuant to the mandate, the State dismissed the remaining charges on May 20, 2011, and the district court ordered Waddell to serve the remainder of his 330-month sentence. Waddell did not appeal this ruling.

On March 30, 2012, Waddell filed a K.S.A. 60-1507 motion and supporting memorandum. On December 19, 2012, the district court summarily denied Waddell's motion for failure to timely file it within the one-year statute of limitations as required by K.S.A. 2012 Supp. 60-1507(f). The district court found that the final mandate from our court was issued on March 24, 2011. Waddell's motion was filed with the district court on March 30, 2012, six days after the statute of limitations expired. Finding no reasons to extend the filing deadline, the district court denied the motion.

Waddell timely filed a motion to alter or amend the district court's ruling, arguing that the statute of limitations began to run 10 days after he was "resentenced" on May 20, 2011. On January 4, 2013, the district court denied the motion, finding that the statute of limitations period began running from the day this court issued its mandate. Waddell timely appealed the decision.

On appeal, a panel of our court reversed the district court's ruling, finding that Waddell's motion was timely filed pursuant to the prison mailbox rule, as Waddell "filed" his K.S.A. 60-1507 motion with prison officials on March 19, 2012. *Waddell v. State*, No. 109,583, 2014 WL 3630218, at *6 (Kan. App. 2014) (unpublished opinion) (*Waddell III*). The case was remanded with instructions to put Waddell's motion back on the active

3

docket. 2014 WL 3630218, at *6. The district court scheduled Waddell's motion for an evidentiary hearing on May 31, 2016, and July 14, 2016, respectively.

In Waddell's K.S.A. 60-1507 motion and memorandum, he alleged the second jury trial was fundamentally unfair for several reasons, but the claims important to this appeal include the following:

- Trial counsel was ineffective for failing to object to the admission of a photograph of various sex toys found in Waddell's home;
- Trial counsel was ineffective for failing to object to extensive evidence introduced about Waddell's vast pornographic magazine collection;
- Trial counsel was ineffective for failing to object to Detective Roger Proehl's testimony about investigating evidence of "grooming" in sexual abuse cases and how this evidence was present in Waddell's home;
- Trial counsel was ineffective for failing to consult with an expert regarding Waddell's medical condition, which he claimed prevented him from engaging in sexual intercourse;
- Trial counsel was ineffective for failing to consult with an expert to rebut the testimony of Pam Kvas, the nurse who performed the physical examination of J.J.; and
- Trial counsel was ineffective for failing to consult with an expert in child interviewing techniques in cases involving sexual assault or abuse.

For the evidentiary hearing, Waddell hired a legal expert named Michael Whalen, an attorney with considerable experience in reviewing and briefing K.S.A. 60-1507 cases on appeal, to testify on his behalf. Whalen submitted an expert report in advance of the hearing. To rebut Whalen's testimony, the State hired an expert named Paul Dean, an

4

attorney with extensive experience in defending Jessica's Law cases and experience prosecuting K.S.A. 60-1507 cases, to testify. Dean did not submit an expert report.

We will discuss each of Waddell's ineffective assistance claims in turn, summarizing the evidence presented at the second trial in February 2008 and the testimony presented about that evidence at the evidentiary hearing in May 2016.

*Sex toy evidence*

At the second trial in February 2008, the State introduced a photograph of various sex toys that were found in Waddell's bedroom during a search of his home executed pursuant to a valid search warrant. The State introduced this photograph to support its theory that Waddell had gained J.J.'s trust over time so he could sexually abuse her; in other words that Waddell "groomed" J.J. Detective Proehl testified that during child sexual abuse investigations, the presence of sex toys in the place where the abuse was alleged to have occurred is an indicator of grooming. Specifically, Detective Proehl opined that items like sex toys are used as a means of desensitizing child victims to sexual abuse.

Waddell's trial counsel did not object to the admission of this photograph. On cross-examination of Detective Proehl, trial counsel elicited testimony that no sex toys were found when the first search warrant was executed on Waddell's home in February 2003. Detective Proehl admitted that he did not find the sex toy evidence until May 2003, when he executed a second search warrant and after Waddell had moved out of his trailer. There was no additional mention of the sex toy evidence during the second trial.

At the evidentiary hearing held on Waddell's K.S.A. 60-1507 motion in 2016, Whalen testified that trial counsel was deficient for failing to object to the sex toy evidence, especially considering the extensive evidence introduced about Waddell's

5

pornographic magazine collection. He explained that the evidence was irrelevant to any of the crimes charged and that there was no proof it was ever shown to J.J. or used to encourage her as Detective Proehl testified. Whalen stated that the evidence was instead used to indict Waddell's character. Whalen testified that the sex toy evidence likely had a prejudicial effect because of this, as it was referenced several times during the short jury trial. He testified that had the evidence been excluded, it could have made a probable difference in the outcome of the trial.

On direct examination, Dean, the State's expert, agreed that the sex toy evidence was objectionable because there was never any proof that it was used in relation to the crimes charged. However, despite trial counsel's failure to object to this evidence, Dean testified that trial counsel's strategy was still reasonable in how he approached the issue at trial. Specifically, Dean testified that he spoke with trial counsel about counsel's strategy regarding the sex toy evidence, and counsel's plan was to address the issue solely on cross-examination of Detective Proehl. Dean noted that, in his review of the record, he found that trial counsel did just that and no additional mention of the sex toy evidence was made throughout trial. While the evidence could have been objected to, Dean did not believe that this failure amounted to deficient performance or fell below an objective standard of reasonableness considering the overall presentation of the case.

*Pornographic magazine collection evidence*

At the second trial, considerable evidence was presented regarding Waddell's extensive pornographic magazine collection. Detective Proehl testified that he found several hundred copies of these magazines in a shed behind Waddell's house. He further testified that he found several additional magazines scattered throughout Waddell's bedroom and living room. The State entered three examples of pornographic magazines Detective Proehl seized from Waddell's trailer—he testified he chose them because they appeared to depict younger adult women.

While trial counsel objected to admission of these three specific magazines based on relevance grounds, the district court overruled the objection, and counsel never raised any such objection for the remainder of trial. Like the sex toy evidence, Detective Proehl testified that evidence of easily accessible pornographic magazines in places where a child was allegedly abused was a likely indicator of grooming and desensitization. In fact, on redirect examination, Detective Proehl admitted that the vast collection was a key piece of evidence in building the case against Waddell.

Evidence of this pornographic material was referenced repeatedly throughout the four-day trial:

- Officer Jeffry Rodriguez, who assisted Detective Proehl in executing the first search warrant of Waddell's home, testified that there were hundreds of these magazines.
- Maria Diaz, J.J.'s babysitter, testified on cross-examination that J.J. told her that Waddell made her look at pornographic magazines and that she reported this statement to Detective Proehl.
- Waddell testified extensively about his magazine collection on direct and cross-examination, admitting that he caught J.J. on one occasion looking through one of his magazines in his bedroom. Waddell further testified that he had so many magazines because he thought some might be worth money someday.
- The State recalled Detective Proehl as a rebuttal witness for the sole purpose of discussing how many pornographic magazines were found in Waddell's trailer. He again testified that he found hundreds.
- Both parties also brought up the evidence in their closing remarks.

Defense counsel's apparent strategy was to use the pornographic magazine collection as evidence that J.J. fabricated the sexual abuse allegations and to undermine the State's theory that Waddell groomed J.J. for sexual abuse. Counsel believed that the

7

State only presented evidence showing a singular violent incident, so any presentation of evidence inconsistent with that theory served to hurt the State's case—a fact he highlighted consistently throughout trial. Trial counsel also used the pornographic magazine evidence to bolster the defense theory. In other words, J.J. could only have knowledge of certain sexual acts because she was inadvertently exposed to these acts, including witnessing her mother performing oral sex, witnessing Waddell masturbate unbeknownst to Waddell, and secretly going through pornographic magazines in Waddell's home.

On this issue, Whalen testified that trial counsel was deficient for failing to object to the numerous references made to Waddell's extensive pornographic magazine collection. He again explained that the evidence was irrelevant to any of the crimes charged, there was no proof it was ever shown to J.J. or used to encourage familiarity as Detective Proehl testified, and it could not be used for proclivity evidence because all the material depicted adults. He stated that the evidence was instead used to indict Waddell's character. Whalen testified that the references to the material were pervasive throughout trial, such that it likely had a prejudicial effect. He testified that had the evidence been excluded, it could have made a probable difference in the outcome of the trial.

Dean testified that he did not believe trial counsel's failure to object beyond the one instance amounted to deficient performance. Rather, it was a part of counsel's reasonable overall strategy to undermine the State's grooming theory. Specifically, he testified that he had a difficult time coming up with alternative ways to explain J.J.'s knowledge of sexual acts—it seemed to Dean that it was necessary for trial counsel to present at least some of this evidence to support the defense theory.

*Detective Proehl's testimony on "grooming" investigations*

At the second trial, Detective Proehl offered testimony on what he specifically investigated in cases involving allegations of child sexual abuse. In conducting these investigations, he testified that he looked for various items of paraphernalia in an alleged sexual predator's home that the perpetrator might use to facilitate these kinds of crimes, including easily accessible pornographic materials, sex toys, and Polaroid cameras. He also noted that there were specific techniques perpetrators may use to groom children for sexual abuse to gain the child's trust and begin desensitizing them to the abuse. These techniques include doing activities that make the child enjoy spending time with the perpetrator, like having pets to attract the child, taking the child to the park, watching television with the child, or giving the child gifts. Detective Proehl then testified extensively about several different types of items he found in Waddell's home that were indicative of grooming:  numerous pornographic magazines that were easily accessible, sex toys, a Polaroid camera, the fact that Waddell had pets, a nude photograph of a woman in Waddell's bedroom, and a photograph of J.J. in his living room.

Similar to his previous criticisms, Whalen testified that trial counsel was deficient for failing to object to Detective Proehl's testimony on grooming. He noted that an expert is generally needed to explain grooming and its influence, and Detective Proehl was not a certified expert on this subject. Rather, the detective was allowed to testify about what pedophiles do and then compared it to what Waddell did and what he found in Waddell's home in this case. Whalen noted that many of these items by themselves are completely innocent. He further testified that the grooming evidence became a bigger issue during the trial when the State presented inconsistent evidence that grooming never actually occurred. As a result, Whalen stated this testimony likely prejudiced the trial's outcome.

Dean disagreed with Whalen's testimony, finding that trial counsel's performance was not deficient for his failure to object. He testified that the testimony was more procedural—Detective Proehl was simply testifying about his experience with these kinds of cases and what he looks for during these investigations, and then he testified about what he actually found. In other words, Detective Proehl was not offering an expert opinion on grooming or that it necessarily occurred in this case. Trial counsel also testified that he considered objecting to this inquiry, but he refrained because he believed this hurt the State's case—i.e., the State presented this line of questioning about grooming, but all the evidence it presented pointed to a singular situation where Waddell allegedly forcibly raped J.J. Trial counsel indicated his strategy was to use this line of questioning to undermine the State's theory.

*Failure to hire an expert to testify about Waddell's medical condition*

At the second trial, Waddell testified that he had a medical condition that prevented him from engaging in traditional sexual intercourse. However, he admitted that he could maintain an erection and that he could complete various sexual acts.

At the evidentiary hearing, Waddell testified that he spoke to his trial counsel about this condition and expressed a desire to have his doctor testify about it. But he contended that trial counsel said it was not necessary. However, on cross-examination Waddell admitted again that he could get an erection and that he could complete certain sexual acts. He further admitted that he did not actually know if his trial counsel investigated the claim and that his doctor likely would not have been able to testify that he could not complete certain sexual acts.

Whalen then testified that it was unclear if trial counsel ever investigated the claim, but that if he did not, it could amount to deficient performance. Not only could

Whalen not definitively say that trial counsel was deficient as to this issue, he did not engage in any analysis about how the failure prejudiced Waddell.

Trial counsel testified he did not pursue consulting an expert because of Waddell's own statements that he could maintain an erection and complete various sexual acts. Trial counsel believed that the doctor would have only been able to testify that Waddell had complications, not about the effect those complications had on Waddell's ability to have sexual intercourse. Dean also testified that trial counsel was not deficient in this instance because the expert's opinion would be based on Waddell's self-reported pain and thus would be cumulative.

*Failure to hire an expert to rebut Pam Kvas' trial testimony*

At the second trial, Pam Kvas, the nurse who conducted a physical examination of J.J., testified that she did not find any physical evidence that J.J. had been sexually abused. However, she noted that this was typical considering the history J.J. provided to her. Specifically, J.J. told Kvas that between summer and fall of 2002, Waddell penetrated her with his fingers and with his penis. Kvas did not perform the physical examination of J.J. until February 27, 2003, some five or six months later. She explained it was typical that she would not find evidence of physical injury in children J.J.'s age given the elasticity of the genital tissue. On cross-examination, Kvas admitted that J.J. never reported that she had been sodomized either anally or via oral-genital contact. She further admitted that the examination was consistent with someone who had never been sexually abused.

Whalen testified at the evidentiary hearing that he did not believe trial counsel looked into hiring a medical expert to rebut Kvas' trial testimony and, if he did not, that would amount to deficient performance. He noted that even though trial counsel got favorable testimony out of Kvas, there may have been a need for further expert analysis.

11

If counsel did not seek such consultation, then Whalen stated he would have to understand what the basis for trial counsel's strategy was. He could only testify that failure to consult at all would have qualified as ineffective assistance of counsel. Notably, Whalen did not provide any analysis on how a lack of such testimony in this case prejudiced Waddell at trial.

Dean disagreed with this finding, noting that trial counsel was not deficient because he was able to get Kvas to admit a crucial fact: There was no physical evidence that Waddell had ever sexually abused J.J. He explained there is no need to call an additional expert when a State's witness provides evidence that is valuable to the defense. Dean stated this approach was wholly consistent with trial counsel's strategy that nothing happened and that an additional expert was unnecessary in this instance.

*Failure to hire an expert to testify about child interviewing techniques*

At the second trial, Angela Proehl, the investigator who interviewed J.J. in February 2003 following J.J.'s reports of sexual abuse, testified about what J.J. disclosed to her during the interview. J.J. told Proehl that Waddell grabbed her and pulled her into his trailer, that she tried to slap him, and that he pulled her into his bedroom. She told Proehl that Waddell put his "part" inside her vagina, that he put his mouth on her nipples, that he put his penis into her anus, that he made her manually stimulate his penis with her hands, and that he threatened her with a knife. J.J. also reported to Proehl that she was scared and that Waddell hurt her when he put his penis inside her. At the close of direct examination the State offered the entire recorded video into evidence, it was admitted without objection, and it was published to the jury.

This video recording was the subject of much scrutiny during both direct appeals in Waddell's underlying criminal case. See *Waddell I*, 2006 WL 1379576; *Waddell II*, 2011 WL 767836. In *Waddell I*, our court reversed Waddell's convictions following his

first jury trial because the video recording was entered in lieu of testimony from J.J., which violated Waddell's right to confront his accuser. 2006 WL 1379576, at *8. In *Waddell II*, our court reversed four of Waddell's convictions on statutory grounds, finding that the district court erred in admitting the videotape without providing Waddell a copy of the written transcript of the interview as required by K.S.A. 60-460(a). 2011 WL 767836, at *3-4. However, our court recognized that Waddell did not specifically challenge any testimony regarding the admissibility of statements made by J.J. to Angela Proehl, Detective Proehl, or Kvas. 2011 WL 767836, at *3.

At the evidentiary hearing on the K.S.A. 60-1507 motion, Waddell testified that he was unsure if he discussed obtaining an expert on child interviewing skills with his trial counsel. Whalen also testified that he was unaware whether trial counsel consulted with an expert regarding child interview techniques. He noted that the interviewer had no formal psychological training for these types of interviews and that it may have been something trial counsel should have investigated. Nevertheless, Whalen did not allege that trial counsel was deficient given the lack of information, nor did he provide any analysis as to how Waddell was prejudiced by a failure to consult such a witness.

Both trial counsel and Dean testified they could find nothing wrong with the video that caused them concern. Both agreed, based on a review of the video, that no expert was needed. Dean noted that trial counsel's performance was not deficient given that there were no glaring concerns in the interview, such as leading or suggestive questions used to coach a child witness.

*District court's ruling*

The district court took the matter under advisement and later issued its memorandum denying Waddell's K.S.A. 60-1507 motion on September 27, 2017. The district court found that trial counsel was not deficient for failing to object to the

13

admission of the sex toy evidence or the numerous references to Waddell's pornographic magazine collection. In so finding, the court recognized that it had to give significant deference to trial counsel's strategic decisions. It noted that trial counsel considered the impact this evidence could have on the trial but ultimately concluded that the best strategy was to admit the evidence to support the defense's theory that J.J. fabricated the allegations. Additionally the district court stated that, even without the State's presentation of the evidence, it was likely that Waddell would have had to reference that evidence anyway to support the defense theory of the case.

Concerning Detective Proehl's testimony, the district court again found that trial counsel was not ineffective for failing to object. It found that Detective Proehl's statements were made in response to procedural questions about how the detective investigated child sexual abuse claims. In other words, Detective Proehl was merely describing his own conduct and the way in which he conducted these investigations. Thus, the detective offered no improper expert opinion.

Regarding the issues surrounding trial counsel's alleged failure to consult various experts, the district court specifically found that Waddell failed to meet his burden to show how trial counsel was deficient in this regard or how he was prejudiced. As to his complaints about not calling experts about Waddell's medical condition and Kvas' testimony, the district court stated that Waddell presented no evidence to support his claims that experts were needed in these subjects, nothing showing that they were available to testify as to these subjects, and nothing about what their opinions on those subjects might be. On the child interviewing techniques issue, the district court held that Waddell presented no evidence as to what any potential expert's opinion would have been or how counsel's failure to hire such an expert prejudiced him at trial.

14

In summary, the district court found that Waddell simply failed to meet his burden of showing ineffective assistance of counsel on any of the issues he presented and, accordingly, denied his K.S.A. 60-1507 motion. Waddell has timely appealed.

ANALYSIS

After a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j) (2020 Kan. S. Ct. R. 223). We review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013). We must also give deference to the district court's findings of fact, accepting as true the evidence and any inferences that support or tend to support the district court's findings. *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007). Our review of the district court's ultimate conclusions of law is de novo. *Adams*, 297 Kan. at 669. However, we do not reweigh testimony or the credibility of any witnesses when reviewing ineffective assistance of counsel claims. *Mullins v. State*, 30 Kan. App. 2d 711, 716, 46 P.3d 1222 (2002).

In his brief, Waddell claims that the district court erred in denying his K.S.A. 60-1507 motion. Specifically, Waddell asserts that he established that trial counsel's performance was deficient because he failed to object to the following:  (1) introduction of sex toy evidence, (2) extensive references to Waddell's extensive pornographic magazine collection, and (3) Detective Proehl's testimony about how he conducts child sexual abuse cases. Waddell further claims that he established that trial counsel was ineffective because he failed to consult with experts regarding Waddell's medical condition that allegedly prevented him from engaging in sexual intercourse, to rebut Kvas' medical testimony, and regarding child interview techniques in cases of sexual

15

assault and abuse. Waddell argues that he was prejudiced by counsel's deficiencies because, but for these deficiencies, the trial's outcome would have been different.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012); *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007). The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the movant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Waddell's first two claims are similar in nature. He argues that his trial counsel was deficient for failing to object to admission of evidence depicting his sex toys and to numerous references made about his extensive pornography collection. He contends that this evidence was highly prejudicial to his case because the jury could have easily concluded that Waddell was a sexual deviant.

A fair assessment of trial counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at

16

that time. Again, there is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Edgar*, 294 Kan. at 838.

While trial counsel's strategic choices in this case were certainly unorthodox, we believe the district court was correct in determining that his failure to object to this evidence was not deficient. The record shows that trial counsel considered the impact this evidence would have on the trial. However, counsel reasonably concluded that his best course of action to discredit the State's case, support the defense's theory, explain Waddell's interactions with J.J., and explain J.J.'s knowledge of sexual acts was to let the evidence come in relatively unchallenged. In consequence, to support the defense theory, there was no avoiding at least some reference to this material, particularly considering the fact that Waddell made voluntary statements to police about this material and how he previously observed J.J. looking at it in his home. While the defense strategy was unsuccessful, the record shows that trial counsel reasonably weighed the evidence and presented a logical and cohesive version of events that possibly could create reasonable doubt in the State's case. And because Waddell could not show how counsel's performance was deficient, this court properly denied his motion.

Waddell's next claim is that his trial counsel was deficient for failing to object to Detective Proehl's testimony regarding his experience investigating child sexual abuse cases and as to various techniques that perpetrators use or items they may possess to groom their victims. Waddell argues this was improper expert opinion and Detective Proehl should not have been allowed to testify on this subject. Because counsel failed to object, Waddell contends he was unfairly prejudiced at trial.

At the evidentiary hearing and on appeal, Waddell relies on our court's opinion in *Mashaney v. State*, No. 101,978, 2010 WL 3731341 (Kan. App. 2010) (unpublished opinion). In *Mashaney*, the movant was previously convicted of aggravated criminal sodomy and aggravated indecent liberties stemming from an incident involving his 5-

17

year-old daughter. At trial, a detective with no prior experience in child sexual abuse cases testified to the following: (1) that there was a correlation between bedwetting and sexual abuse and (2) that abusers tend to groom their victims by giving them gifts. The detective noted that the defendant gave the victim a gift. Trial counsel did not object to this line of questioning. At a presentence hearing to set aside the defendant's convictions, trial counsel admitted that she had no strategic reason for why she failed to object. Our court construed the detective's testimony as improper expert opinion, finding that there was no evidence to support that the officer was an expert, and thus he should not have been allowed to testify as to this subject matter. 2010 WL 3731341, at *9. It further found that the deficiency proved highly prejudicial because the only evidence offered in the case was the victim's accusation—there was no physical evidence she had been abused. Such testimony severely affected the defendant's credibility during the short jury trial. 2010 WL 3731341, at *10.

While *Mashaney*'s facts are similar to ours, it is distinguishable from the present case in several ways. Unlike the detective in *Mashaney*, Detective Proehl testified that he had extensive experience and specialized training in conducting child sexual abuse investigations. His testimony largely focused on his investigative process in these cases: how he gathered information, how he conducted his investigations based on that information, various items and techniques he looked for, and how he gathered evidence based on all of this. Detective Proehl then testified about how he applied that process in this case. He found various items in Waddell's home that were consistent with the information he received from J.J. and other witnesses—pornographic magazines, a naked photograph of a young woman found in Waddell's room, knives, etc. This was all corroborating evidence. Detective Proehl also collected other items that were consistent with his knowledge and training in these types of cases—a photograph of J.J., a Polaroid camera, sex toys, other pornographic material, etc. However, he also admitted there were many things he did not find, such as biological evidence—a fact that defense counsel specifically focused on and highlighted all throughout the trial.

Most significantly, unlike counsel in *Mashaney*, trial counsel in this case made a strategic decision not to object to Detective Proehl's testimony because of how detrimental he believed it was to the State's theory. Specifically, the State's theory was that Waddell groomed J.J. for sexual abuse. Detective Proehl's testimony was the only evidence that supported this theory. The evidence presented by all of the State's other witnesses painted a very different picture: that J.J. reported a single horrifically violent assault. In fact, one of the State's witnesses, Angela Proehl, disagreed on cross-examination that grooming ever occurred in this case based on her interview with J.J.

Trial counsel consistently highlighted the State's inconsistent evidence with various witnesses throughout trial and ultimately used his closing arguments to make a strong plea that the State presented no actual evidence to convict Waddell. Again, while the strategy was unorthodox and unsuccessful, the record shows that trial counsel reasonably weighed the evidence and presented a logical and cohesive version of events that was calculated to create reasonable doubt in the State's case. Because Waddell cannot show that trial counsel's failure to object to this testimony was deficient, the district court correctly denied Waddell's K.S.A. 60-1507 motion.

As for the remaining issues related to trial counsel's failure to consult various experts, Waddell has simply failed to meet his burden to show that trial counsel's performance was deficient. Based on the record, Waddell makes no showing that trial counsel actually failed to investigate these claims or consult with experts, let alone that he was deficient by any such failure. Both Waddell and Whalen testified at the evidentiary hearing that they were unsure if trial counsel ever consulted with various experts or investigated the various claims certain State witnesses made at trial. Thus, Waddell's ineffective assistance claims as to these points are speculative at best. But, even if he could show that trial counsel's performance was deficient, Waddell makes no specific argument as to how the alleged deficiencies prejudiced his right to a fair trial.

In summary, because Waddell failed to meet his burden of showing that his counsel was ineffective as to the issues in his motion, we find that the district court did not err in denying his K.S.A. 60-1507 motion.

Affirmed.