NOT DESIGNATED FOR PUBLICATION

No. 123,889

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DEREK ALAN GORMLY,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed July 8, 2022. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ISHERWOOD, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: Derek Gormly appeals the district court's decision denying his K.S.A. 60-1507 motion following an evidentiary hearing. Gormly's motion alleged that his trial counsel provided constitutionally defective representation and attacked multiple aspects of the attorney's defense during the underlying bench trial. After hearing testimony from both Gormly and his attorney, the district court—the same judge who presided over Gormly's trial—found that the attorney's description of the events was credible and denied Gormly's requested relief. We affirm.

1

In 2016, Gormly was convicted after a bench trial of one count of aggravated indecent liberties with a child and one count of lewd and lascivious behavior. At the same time, the court found him not guilty of two additional counts of aggravated indecent liberties with a child. The incidents giving rise to Gormly's convictions involved D.S., who was 13 years old at the time the events took place in October 2012, while Gormly was 26.

The district court imposed sentences of life in prison without the possibility of parole for 25 years and 16 months' imprisonment for Gormly's respective crimes, ordering the sentences to be served consecutively. A panel of this court affirmed Gormly's convictions and sentence terms, though we remanded the case for resentencing to correct an order regarding Gormly's post-imprisonment supervision status. *State v. Gormly*, No. 117,378, 2018 WL 671489, at *1-2 (Kan. App.) (unpublished opinion), *rev. denied* 308 Kan. 1593 (2018).

In November 2019, after his resentencing had been completed in accordance with this court's decision, Gormly filed a pro se motion under K.S.A. 60-1507. Gormly claimed that his trial counsel, Frederick Meier, had provided constitutionally defective representation in several ways. After amending his motion with the assistance of counsel, Gormly alleged:

- Meier failed to adequately prepare for trial and did not adequately communicate with Gormly about his defense.

- Meier had not interviewed several potential witnesses—including Gormly's mother and his ex-wife—who could have been helpful to his defense or impeached others' testimony, particularly the testimony of D.S.'s stepfather. Gormly believed

the stepfather's testimony to be particularly harmful to Gormly's defense, as the stepfather had corroborated D.S.'s timeline of the encounter with Gormly that led to his convictions and provided other damaging observations about interactions between Gormy and D.S.

- Meier failed to discuss the possibility of a plea deal or otherwise pursue that possibility with the State.

- Meier failed to request a departure sentence.

The district court held an evidentiary hearing on Gormly's motion. The judge who presided over this hearing was the same judge who had presided over Gormly's bench trial. During the hearing, the court heard testimony from both Gormly and Meier.

In his testimony, Gormly recalled meeting with Meier in person, but he stated that he never received any letters or phone calls from the attorney. He explained that although he received some copies of discovery, those reports were missing a few pages that he never received.

Gormly also testified that his ex-wife, his mother, and another person named Rachel Osban were sources of information for his defense and potential witnesses, as all three could have provided information regarding Gormly's tumultuous relationship with D.S.'s stepfather. Gormly testified the stepfather was an important witness against him at trial, and their relationship was "bad right from the start." According to Gormly, the stepfather had reported Gormly and his girlfriend to the Kansas Department for Children and Families and had driven by his house multiple times. Gormly testified that the stepfather even tried to run him off the road at one point, which prompted Gormly to obtain a protection-from-abuse order against him. Gormly stated that he had informed Meier of those circumstances.

3

According to Gormly, Meier had spoken with Gormly's mother but determined her testimony was unnecessary. Gormly stated that he believed Meier had spoken with his ex-wife on two occasions, though neither conversation took place when Gormly was present. And Gormly called Osban to testify on his behalf at the evidentiary hearing; Osban testified that she did not recall speaking with Meier in preparation for trial, but she stated she had never witnessed Gormly and D.S.'s stepfather interact.

Finally, Gormly testified he never discussed the possibility of a plea or a sentencing departure with Meier, nor did Meier explain his trial strategy. Gormly explained he was "kind of blind as to what was really going on . . . just letting [Meier] control everything and do what he thought was best."

Meier provided a different account of the events leading to Gormly's trial and sentencing. Meier explained that he was appointed to represent Gormly and had also represented Gormly in previous cases. Meier recalled providing Gormly with the reports and discovery in the case; he explained that after sentencing Gormly had lost the discovery and wanted another copy, but Gormly had not informed Meier that certain pages of discovery were missing beforehand. Based on his case notes, Meier met with Gormly 11 times before trial.

Turning to the potential defense witnesses, Meier testified his trial preparation included discussing with Gormly that his mother and ex-wife could be possible witnesses. Meier's trial strategy turned on D.S.'s jealousy of Gormly's ex-wife and D.S.'s possible fabrication of the allegations. He explained that his strategy was to discredit D.S. and to demonstrate through the ex-wife's and Gormly's mother's testimony that D.S.'s testimony was untrue by highlighting the lack of corroborating evidence. Meier did not recall Gormly discussing any other potential witnesses, such as Osban.

4

Meier explained that he anticipated that Gormly's mother would testify at the bench trial, but she did not appear in court and he did not know why. Gormly's ex-wife did testify at the trial. Meier confirmed from his case notes that he spoke with witnesses over the phone twice but could not recall if he talked to Gormly's ex-wife or his mother.

Meier testified that he discussed the relationship between Gormly and the stepfather with Gormly often. He explained that although he was aware of the situations that Gormly complained of, he did not use them in his trial strategy because they did not "really fit into what would be . . . impeachable evidence." Meier explained that he did not find the stepfather's testimony to be strong for the State; although the stepfather's testimony corroborated the time and place of D.S.'s allegations, Meier testified that he did not believe that this testimony impacted the verdict "in any way."

With regard to a potential plea, Meier testified that he was "never authorized to ask for an offer." He stated that Gormly's attitude "was that this didn't happen and so it was pretty apparent from the start that plea negotiations were not going to occur." Meier testified that discussing a plea with Gormly would have been "counterproductive" and harmful to their relationship because Gormly was "adamant about his position." Meier also discussed a sentencing departure with Gormly and testified that, generally, a departure is "always available, whether it was likely foreseeable or even remotely possible, I'm sure we would have had that conversation." But Meier did not file a motion for departure "simply because it would have been without merit and unlikely—virtually impossible to be granted."

After the hearing, the district court denied Gormly's requests for relief.

- The district court found that Meier was not ineffective for failing to impeach the stepfather's testimony. The court noted that the contentious relationship between Gormly and the stepfather was discussed throughout the trial, and the court found

5

that Meier's cross-examination of the stepfather underscored the lack of trust between the two men. The court found that any further impeachment of the stepfather by Meier would not have affected its decision, as the case "turned upon the credibility of the victim."

- The district court found that Gormly had not shown any deficiency in Meier's communication with Gormly or preparation for trial. The court found that Meier visited Gormly 11 times and, though Meier did not call or send mail, he had discussed the reports, evidence, and possible witnesses with Gormly. Similarly, the district court found that Meier was not constitutionally ineffective for failing to secure Gormly's mother and Osban as defense witnesses.

- The district court determined that Meier's failure to pursue a plea agreement was not constitutionally deficient. The court found that Gormly denied the allegations, so Meier did not want to damage their relationship by discussing a plea agreement. More importantly, Gormly never asked Meier to seek a plea, and there was no evidence to suggest that the State would have been amenable to a plea deal.

- The district court was not persuaded by Gormly's claim that Meier was ineffective for failing to move for a sentencing departure. Based on Gormly's criminal history, D.S.'s age, and other factors, the district court found that the motion for a departure would have been denied. So, Gormly was not prejudiced by Meier's failure to file the motion.

Gormly now appeals the district court's denial of his motion.

DISCUSSION

When a district court denies a K.S.A. 60-1507 motion after holding an evidentiary hearing—as the district court did here—appellate courts review factual findings for substantial competent evidence, then determine whether those findings support the district court's legal conclusions. *State v. Adams*, 297 Kan. 665, Syl. ¶ 1, 304 P.3d 311 (2013). "Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion." *State v. Talkington*, 301 Kan. 453, Syl. ¶ 3, 345 P.3d 258 (2015). Appellate courts do not reweigh the evidence, assess witness credibility, or resolve evidentiary conflicts. 301 Kan. 453, Syl. ¶ 3. Legal conclusions are subject to unlimited review. *Adams*, 297 Kan. 665, Syl. ¶ 1.

The Sixth Amendment to the United States Constitution guarantees criminal defendants "the assistance of counsel" for their defense. U.S. Const. amend. VI. This assistance must be "reasonably effective," because the failure to provide effective assistance of counsel deprives a defendant of a fair trial in violation of the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To determine whether an attorney's performance constitutes ineffective assistance of counsel, courts examine whether the attorney's representation was deficient and whether any constitutionally defective representation prejudiced the defendant. 466 U.S. at 687. That is, the defendant must show (1) the attorney's actions were objectively unreasonable under the totality of the circumstances, and (2) but for those actions, there is a reasonable probability that the outcome would have been different. 466 U.S. at 687; *Chamberlain v. State*, 236 Kan. 650, Syl. ¶ 3, 694 P.2d 468 (1985) (adopting *Strickland*).

Under *Strickland*'s effectiveness inquiry, courts' review of an attorney's actions is "highly deferential"; in other words, there is "a strong presumption that counsel's conduct

7

falls within the wide range of reasonable professional assistance." *Chamberlain*, 236 Kan. 650, Syl. ¶ 3. Courts must examine the representation from the attorney's perspective at the time of trial "'to eliminate the distorting effects of hindsight.'" *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012). Matters of trial strategy, such as what witnesses to call or what motions to file, are decisions for the attorney, and courts will defer to the attorney's discretion. 294 Kan. at 838-39. Other decisions, such as whether a defendant will testify, are ultimately up to the defendant. 294 Kan. at 838.

*Strickland*'s second consideration—its analysis of prejudice—focuses "'on the fundamental fairness of the proceeding.'" *Balbirnie v. State*, 311 Kan. 893, 900, 468 P.3d 334 (2020) (quoting *Strickland*, 466 U.S. at 696). To show a reasonable probability that the outcome would have been different but for an attorney's deficient representation, there must be "'a probability sufficient to undermine confidence in the outcome.'" *Chamberlain*, 236 Kan. at 655. Appellate courts must consider all the evidence before the jury, with prejudice more likely when the verdict has little evidentiary support rather than a verdict "'with overwhelming record support.'" *Balbirnie*, 311 Kan. at 899 (quoting *Strickland*, 466 U.S. at 695-96).

Against this backdrop, Gormly challenges all aspects of the district court's denial of his K.S.A. 60-1507 motion. After carefully reviewing the parties' arguments and the evidence presented at the hearing before the district court, we find no error in the court's assessment and affirm its judgment.

Our review of each of Gormly's assertions is guided by two practical realities. *First*, because this appeal arises after an evidentiary hearing, many of the district court's rulings are rooted in credibility assessments of the two primary witnesses—Gormly and Meier. Broadly speaking, the court's written explanation of its ruling shows that it found Meier's testimony to be credible and more accurate. Unlike the district court, the judges of the Court of Appeals were not present to hear this testimony or observe the witnesses'

demeanor. See *Talkington*, 301 Kan. 453, Syl. ¶ 3. We therefore defer to the district court's assessment of these matters. *Second*, the district court judge who evaluated the evidence at the hearing on Gormly's K.S.A. 60-1507 motion was the same judge who presided over Gormly's bench trial and sentencing hearing. Thus, this is not a case where a district court was required to assess the potential effect a change in circumstances might have had on a jury's verdict. Instead, the district court's explanation of its evidentiary assessments and its analysis of the prejudicial effect any alleged deficiency might have had are particularly compelling.

With this background, we turn to Gormly's challenges to his attorney's actions.

1. *Gormly has not shown that his attorney provided constitutionally deficient representation in his communication, witness preparation, or presentation of his theory of the case.*

Gormly's first three claims of error in his appeal—concerning Meier's communication, witness preparation, and presentation of Gormly's challenge to D.S.'s stepfather's testimony—are related, in that they involve allegations regarding Gormly's interactions with Meier leading to his trial. In each instance, Gormly's and Meier's explanations were markedly different. For example, Gormly indicated that Meier contacted him only four times throughout the duration of the case; Meier, however, testified that he met with Gormly 11 times and discussed the case strategy with him— information that was documented in Meier's case notes. Their respective accounts of Meier's investigation of potential witnesses were similarly divergent.

The district court heard testimony from both men at the evidentiary hearing and found Meier's explanation—not Gormly's—to be credible. Appellate judges, who are removed from these proceedings, cannot reassess those credibility determinations. *Talkington*, 301 Kan. 453, Syl. ¶ 3. And while Gormly may dispute Meier's testimony and account of his efforts to communicate with Gormly, the attorney's explanation

9

provides substantial competent evidence to support the district court's finding that Meier adequately communicated with Gormly and prepared for trial. Thus, Gormly has not shown any deficiency in Meier's communication or general trial preparation.

Gormly's assertions regarding Meier's witness preparation and defense strategy are similarly unpersuasive. Deciding which witnesses to investigate and call is a strategic decision—the province of the attorney, not the client—to which courts will generally defer. *Sola-Morales v. State*, 300 Kan. 875, 887, 335 P.3d 1162 (2014). Gormly has the burden to show that the failure to call witnesses was an uninformed decision that was "not the result of strategy." 300 Kan. at 888.

Gormly's primary claim in his K.S.A. 60-1507 motion was that Meier should have investigated (and called) additional witnesses to impeach the testimony of the stepfather. Though the stepfather did not witness any of the incidents giving rise to the charges in Gormly's case, his account of the events corroborated D.S.'s explanation and her timeline of when the incidents occurred. Thus, in Gormly's view, if Meier had sufficiently undercut the stepfather's explanation by questioning his motivations, the district court would have found D.S.'s account less credible.

Gormly testified that he provided Meier with three potential witnesses who would be helpful to discredit the testimony of the stepfather—Gormly's ex-wife, his mother, and Osban. But this assertion was riddled with evidentiary deficiencies. Meier testified at the hearing that Gormly had never identified Osban as a potential witness; regardless, Osban's testimony at the evidentiary hearing proved unremarkable, as she did not have any observations regarding Gormly's and the stepfather's interactions. Meier *did* call Gormly's ex-wife as a witness at trial, and Gormly does not identify any way in which the attorney's examination of her was insufficient. And though Meier thought Gormly's mother might have provided favorable testimony based on Gormly's representations, she failed to appear at trial to testify.

10

In his appeal, Gormly asserts that Meier could have subpoenaed his mother to ensure her presence in court. But while we agree in a general sense that Meier could have requested the court to issue a subpoena for his mother's testimony, we do not find this argument compelling here. As the person requesting relief under K.S.A. 60-1507, Gormly bears the burden of showing what impact his mother's testimony might have had on his case. But Gormly has not provided any explanation of what her testimony may have been. And his mother did not to appear in court to testify at the evidentiary hearing.

Moreover, the district court judge—who considered the evidence at trial and the hearing—did not agree with Gormly's assessments of the need for impeachment evidence or the impact such evidence may have had during the trial. In its ruling, the court explained the acrimonious relationship between Gormly and D.S.'s stepfather was evident at trial. As the court indicated, Meier's decision to highlight this relationship and question the stepfather's motivations during cross-examination, rather than through calling self-serving witnesses, was a strategic one. The record supports this assessment.

Even more compelling, the district court found that Gormly had not shown that the absence of any of these potential witnesses affected the outcome of the trial. The court explained that its decision to convict Gormly was based on D.S.'s testimony, not that of her stepfather. In other words, any additional efforts to impeach the stepfather's account would not have changed the court's assessment. Appellate courts do not reweigh fact-finders' assessment of the evidence.

In short, the record supports the district court's conclusion that Gormly failed to prove any deficient performance that would have changed the outcome of his trial.

2. *Gormly has not shown that his attorney provided defective representation in failing to pursue a plea agreement.*

Gormly next argues that Meier provided ineffective assistance when he failed to explore any possibilities of a plea agreement. In denying Gormly's claim, the district court found Meier's explanation that Gormly utterly denied the State's allegations and would not have accepted a plea to be credible. The court also determined that even if Gormly had desired Meier to pursue a plea deal, Gormly had not demonstrated any prejudice, as he had not shown that the State ever offered a plea agreement or even would have been amenable to one. We find this reasoning persuasive.

As a starting point to our analysis, we note that there is evidence in the record—in the form of Meier's testimony—to support the district court's finding that Gormly denied the charges against him and wished the case to proceed to trial. The United States Supreme Court has held "that, as a general rule, defense counsel has the duty to communicate [to the defendant] formal [plea] offers from the prosecution." *Missouri v. Frye*, 566 U.S. 134, 145, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012). But a defendant has no right to be offered a plea deal. 566 U.S. at 148. There is no evidence here that the State communicated a plea offer to Meier such that he violated his duty to communicate any formal offer to Gormly. Instead, Meier testified that he was not authorized to negotiate with the State and he understood that Gormly wanted a trial.

These facts are thus similar to circumstances the Kansas Supreme Court considered in *Schoonover v. State*, 218 Kan. 377, 379, 543 P.2d 881 (1975), *cert. denied* 424 U.S. 944 (1976). The defense attorney in *Schoonover* did not contact the State for plea negotiations, and the defendant advised her attorney not to negotiate a plea. The prosecutor in that case testified that he may have considered an offer, but he intended to continue the case as charged. Based on this evidence, the district court concluded the movant had failed to show defense counsel was ineffective. On appeal, the Supreme Court affirmed, finding Schoonover had "insisted upon being tried as charged and she

12

emphatically refused to permit her counsel to enter into plea negotiations." 218 Kan. at 386. Further, the prosecutor testified that he "was in no position to do anything but try [the defendant] as charged." 218 Kan. at 386.

Here, Meier similarly testified that Gormly insisted that he was not guilty and that he wished to proceed to trial. Meier had represented Gormly in criminal cases before, so they had an established relationship. Meier testified that discussing a possible plea with Gormly would be counterproductive and harmful to that relationship. And Gormly did not authorize Meier to engage in plea negotiations with the State. Thus, the evidence in the record supports the district court's conclusion that Gormly had not shown any deficiency in Meier's representation.

The district court also correctly noted that Gormly had not presented any evidence that the State would have been willing to enter into a plea agreement, even if given the opportunity. Unlike in *Schoonover*, Gormly did not call the prosecutor to testify at the evidentiary hearing. Cf. 218 Kan. at 386. And without evidence that the State may have considered a plea deal, Gormly cannot sufficiently show he was prejudiced by Meier's failure to negotiate a plea. See *Seward v. State*, No. 115,841, 2017 WL 948129, at *3 (Kan. App.) (unpublished opinion) (summary denial of K.S.A. 60-1507 proper where movant argued counsel was ineffective for failing to negotiate a better plea agreement but provided no evidence that State offered a different plea or that a better one existed), *rev. denied* 306 Kan. 1320 (2017). We find no error in the district court's denial of Gormly's claim.

3. *Gormly has not shown that a request for a sentencing departure would have been successful.*

In his final claim of error, Gormly asserts that Meier provided ineffective assistance of counsel when he failed to request a departure sentence. As we have indicated, the sentencing court imposed an off-grid sentence of life in prison for Gormly's

conviction of aggravated indecent liberties. See K.S.A. 2012 Supp. 21-5506(b)(3)(A); K.S.A. 2012 Supp. 21-6627(a)(1). Gormly asserts that, though he had some previous history of criminal behavior, he did not have prior convictions listed under K.S.A. 2012 Supp. 21-6627(a)(1). Thus, he argues, the district court would have been permitted to impose a departure sentence if it found substantial and compelling reasons to do so. K.S.A. 2012 Supp. 21-6627(d)(1) (allowing the sentencing judge to impose a departure only "for a first time conviction of an offense listed in subsection[a][1]"). The court never had the opportunity to consider a departure, however, because Meier did not request one. We are unpersuaded by Gormly's final claim of error for at least two reasons.

*First*, though Gormly broadly asserts that Meier should have requested a sentencing departure, he offers no substantial or compelling reasons why a departure would have been warranted. Conclusory allegations with no evidentiary basis in the record are not enough to satisfy a person's burden in a K.S.A. 60-1507 motion. *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018).

And *second*, as the district court explained in its ruling, the fact that a court *could* have imposed a lesser sentence does not mean that it was *required* to do so. Again, the court indicated that, as the judge who heard the evidence at trial and sentenced Gormly, it would not have granted a sentencing departure given Gormly's previous convictions and D.S.'s age. In other words, the court found that Gormly had not shown any prejudice from Meier's decision to not request a departure sentence. Once again, the record supports the district court's findings.

In sum, Gormly has not apprised us of any error in the district court's denial of his K.S.A. 60-1507 motion. The district court's rulings were rooted in its assessment of the witnesses' credibility and the strength of the evidence presented, both at the hearing on Gormly's motion and during the bench trial. We affirm the court's well-reasoned decision.

14

Affirmed.